# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3075

_____

Steve R. Faber,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀Appellee,⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*⠀⠀Appeal from the United States
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*⠀⠀District Court for the
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*⠀⠀Northern District of Iowa.
Menard, Inc.,⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀Appellant.⠀⠀⠀⠀⠀⠀*

_____

Submitted: March 12, 2004

Filed: May 21, 2004
_____

Before WOLLMAN, FAGG, and HANSEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

We address on interlocutory appeal whether the district court erred when it denied Menard, Inc.'s (Menards) motion to compel arbitration. We reverse and remand with directions to compel arbitration.

## I.

Faber was hired by Menards in 1981 and was promoted to manager of a store in Iowa in 1996. During the 2000 annual review of his employment contract with Menards, Faber protested some provisions in his 2000 contract that were altered from

the 1999 contract, but Menards refused to adjust them. Faber claims that he signed the 2000 contract only after Menards told him he would otherwise be replaced with a younger and lower salaried individual.

Although Faber did not protest at the time the difference in the arbitration clauses of the 1999 and 2000 contracts, he now argues that the changes in the fee-splitting arrangement found in the 2000 agreement make it unconscionable. Both the 1999 and 2000 agreements require that all specified statutory and non-statutory claims be submitted to binding arbitration before the American Arbitration Association (AAA), but they include different arbitration cost allocations. The 1999 agreement states that "the prevailing party will be entitled to recover the reasonable attorneys' fees and costs incurred by such party in the course of prosecuting or defending the lawsuit or arbitration proceeding brought under the terms of this Agreement." App. at 21. In contrast, the 2000 agreement states that "Each party shall pay their own AAA fees, one half of the arbitrators fees and their own attorneys' fees." App. at 46. The 2000 agreement also contains a severability clause, which states that if a provision is found to be unenforceable or invalid, "the validity, legality, and enforceability of the remaining provisions contained in this Agreement will not in any way be affected or impaired thereby." Id.

Faber was replaced as store manager on May 15, 2001, and was told he could accept a demotion to assistant store manager at a different store. Faber refused the demotion and resigned from his job on June 5, 2001. When he returned to the store as a patron in July, management told him to leave because he was trespassing. Faber filed complaints with the Iowa Civil Rights Commission and the EEOC and received right to sue letters. He then filed a complaint in federal court on April 14, 2003, alleging age discrimination and retaliation in violation of the ADEA, 29 U.S.C. §§ 621-634, and the Iowa Civil Rights Act, Iowa Code § 216. Menards did not answer, but instead moved to compel arbitration.

The district court denied the motion to compel arbitration, finding the fee-splitting provision in the arbitration clause to be procedurally and substantively unconscionable. It refused to sever the provision, however, finding that it was central to the purpose of the arbitration clause. The district court then certified the following questions for interlocutory appeal under 28 U.S.C. § 1292(b):

> (1) Do provisions of an arbitration clause in a contract between an employee and an employer that require the employee to bear his or her own costs and attorney fees in arbitration and half the costs of the arbitrator necessarily or potentially render the arbitration clause unconscionable under Iowa law?
> (2) If so, do the costs and fees of arbitration imposed upon the plaintiff here render this arbitration clause unconscionable?
> (3) If the challenged provisions of the arbitration clause are unconscionable, do they require extirpation of the arbitration clause as a whole or can the arbitration clause be partially enforced to the extent of its "conscionable" provisions?

## II.

We review de novo a determination concerning the arbitrability of a dispute based on contract interpretation. Lyster v. Ryans Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). Factual findings are reviewed for clear error. Dobbins v. Hawk's Enter., 198 F.3d 715, 717 (8th Cir. 1999). Faber argues that the district court correctly found that the arbitration agreement, and particularly its fee-splitting provision, is unconscionable under Iowa law. He contends that the arbitration fees requirement and the attorneys' fees requirement effectively prevent him from being able to vindicate his rights in arbitration. Menards argues that the district court disregarded federal policy and relevant case law when it refused to compel arbitration.

There is a strong federal policy favoring arbitration. The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, preempts all state laws that reflect a policy disfavoring

-3-

arbitration and which are designed specifically to limit arbitration. The Supreme Court has established that an arbitral forum is, as a general matter, adequate to preserve statutory rights and adjudicate statutory claims. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89-90 (2000). ADEA claims are arbitrable, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991), and the FAA extends to most arbitration agreements covering employment disputes. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). In light of this federal policy, arbitration agreements are to be enforced unless a party can show that it will not be able to vindicate its rights in the arbitral forum. See Green Tree, 531 U.S. at 90-92.

We have made clear that when reviewing an arbitration clause, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.[1] Bailey v. Ameriquest Mortgage Co., 346 F.3d 821, 822 (8th Cir. 2003); Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536, 537 (8th Cir. 2002). We have described this narrow scope of review as addressing "only such issues as are essential to defining the nature of the forum in which a dispute will be decided." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001) (citation omitted). We will not extend that review "to the consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement." Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 682 (8th Cir. 2001). Questions about remedy are also outside our scope of review because they do not affect the validity of the agreement to arbitrate. Arkcom, 289 F.3d at 539.

We leave issues that fall outside this scope of review to the arbitrator to decide in the first instance. For example, the arbitrator is to first determine "the extent of

---

[1]Faber's claim clearly falls within the scope of the arbitration agreement, which specifically states that claims arising under the Age Discrimination in Employment Act and all causes of action arising under state laws must be arbitrated. D. Ct. Opinion of June 17, 2003, at 14.

[its] procedural and remedial authority" as limited by contract. Bailey, 346 F.3d at 824. A party must raise any objections before the arbitrator and, if necessary, challenge the arbitrator's award on appeal. Although arbitration agreements that limit the relief an arbitrator may award are disfavored, arbitrators have power to fashion relief. Gilmer, 500 U.S. at 32. The arbitrator may determine if a party has waived statutory rights, and may choose to enforce substantive statutory rights even in the face of contractual limitations. Bailey, 346 F.3d at 824.

Whether an arbitration agreement is valid is a matter of state contract law. See Lyster, 239 F.3d at 946; 9 U.S.C. § 2 (providing that arbitration agreements are valid and enforceable unless grounds "exist at law or in equity for the revocation of any contract"). We examine arbitration agreements on a case-by-case basis. Dobbins, 198 F.3d at 717. Under the facts presented in this case and viewed in light of Iowa law, we cannot conclude that the fee-splitting provision is necessarily unconscionable.

Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable. In re Estate of Ascherl, 445 N.W.2d 391, 392 (Iowa Ct. App. 1989). The Iowa Supreme Court has established that we should analyze the following factors of unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness. Home Federal Sav. & Loan Ass'n v. Campney, 357 N.W.2d 613, 618 (Iowa 1984). The ultimate conclusion of whether a provision is unconscionable is to be made "in view of all the circumstances." C&J Fertilizer, Inc. v. Allied Mut. Ins. Co., 227 N.W.2d 169, 181 (Iowa 1975). A bargain is substantively unfair and therefore unconscionable "if it is such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other." Home Federal, 357 N.W.2d at 619-20. A provision will be invalidated if it is a "nefarious provision, inimical to the public good." Id. at 618.

There is assent, clear notice, and no unfair surprise here because Faber signed the agreement, which we presume that he read before signing. There was unquestionably a disparity in bargaining power, as Menards is a large national company and Faber did not have the ability to negotiate and change particular terms in the form contract. Mere inequality in bargaining power does not make the contract automatically unconscionable, however, see Home Federal, 357 N.W.2d at 619, and is not enough by itself to overcome the federal policy favoring arbitration. Gilmer, 500 U.S. at 33. This disparity of bargaining power nevertheless calls for careful scrutiny of the substance of the contract.

Faber argues that the fee-splitting provision is one that no rational person would agree to it and that its unconscionability invalidates the whole arbitration agreement. We disagree, and we agree with the majority of circuits that a fee-shifting provision by itself does not make an arbitration agreement unenforceable. See Gannon, 262 F.3d at 683 n.9. As we did in Dobbins, 198 F.3d at 717, we will review such fee-shifting provisions on a case-by-case basis rather than adopt a per se rule that an employer may never require an employee to pay a portion of arbitrators' fees. See, e.g., Musnick v. King Motor Co., 325 F.3d 1255, 1259 (11th Cir. 2003) (adopting a case-by-case approach to determine whether arbitration costs are prohibitive); Bradford v. Rockwell Semiconductor Sys., 238 F.3d 549, 556 (4th Cir. 2001) (same); Blair v. Scott Specialty Gases, 283 F.3d 595, 607-08 (3rd Cir. 2002) (same). But see Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1485 (D.C. Cir. 1997) (establishing a per se rule that it is unlawful to require an employee to pay all or part of the arbitrator's fees as a condition of employment); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 894 (9th Cir. 2002) (same).

A fee-splitting arrangement may be unconscionable if information specific to the circumstances indicates that fees are cost-prohibitive and preclude the vindication of statutory rights in an arbitral forum. See Green Tree, 531 U.S. at 90; Dobbins, 198 F.3d at 717. The burden of showing that arbitrators' fees will be cost-prohibitive falls

on the party seeking to avoid arbitration. Green Tree, 531 U.S. at 92. The Supreme Court has not established what quantum of proof is necessary to meet that burden. Id. We require more than just a hypothetical inability to pay, however, to overcome the federal policy favoring arbitration. See Dobbins, 198 F.3d at 716-17. The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration.

Faber failed to meet his burden of proof that the arbitrators' fees make the agreement unconscionable due to their prohibitive cost. The amount of the arbitrator's fees is not well-defined in the contract, and Faber has not provided the evidence necessary to estimate the length of the arbitration and the corresponding amount of arbitrators' fees (e.g. sophistication of the issues, average daily or hourly arbitrator costs in the region). He has also failed to provide evidence of his particular financial situation. Rather, Faber merely argues that the requirement that he pay half of the arbitrators' fees is unconscionable because it is a cost he would not pay in litigation and therefore discourages him from bringing his claims. Without the specific evidence, however, this hypothetical discouragement is purely speculative. See Green Tree, 531 U.S. at 92; Blair, 283 F.3d at 610. Accordingly, because there is insufficient information in the record on this question, we must remand for a determination of this issue. On remand, the district court may further develop the record and consider whether Faber can meet the high threshold of proving that the clause requiring him to pay arbitrators' fees prevents him from being able to raise his claims in arbitration.

If the district court does find on remand that to require Faber to pay half of arbitrators' fees would prevent access to the arbitral forum and preclude him from vindicating his rights, it should sever that clause and then enter an order compelling arbitration. Iowa law permits unconscionable provisions to be severed from the

remainder of a contract. <u>C&J Fertilizer</u>, 227 N.W.2d at 180. The agreement at issue specifically includes a severability clause, and we have held that an arbitration agreement may still be enforceable after a provision within it is found invalid. <u>Gannon</u>, 262 F.3d at 680. Only when the arbitration agreement contains so many invalid provisions that it effectively creates a sham system will the entire agreement be invalidated rather than enforced after severing the offending provision. <u>Id.</u> at 681. No such facts are present here.

We analyze separately the unconscionability of the attorneys' fees provision because attorneys' fees are not unique to arbitration and the recovery of attorneys' fees is usually contingent on a statutory remedy linked to specific statutory rights. We have established that, as a general matter, issues of remedy are for the arbitrator in the first instance. <u>Bailey</u>, 346 F.3d at 824. It is possible that a restriction on remedies in an arbitration agreement may so limit recovery that the agreement is unconscionable and invalid under state law. <u>See</u> <u>Arkcom</u>, 289 F.3d at 539 n.2. Not all limitations on remedy will make the agreement unconscionable, however. The arbitrator is particularly well-suited to interpret the agreement and determine the appropriate "extent of [its] remedial authority." <u>Arkcom</u>, 289 F.3d at 539. The arbitrator has the authority to enforce substantive statutory rights "even if those rights are in conflict with contractual limitations in the agreement that would otherwise apply." <u>Bailey</u>, 346 F.3d at 824. <u>See also</u> <u>Pacifi-Care Health Sys., Inc. v. Book</u>, 538 U.S. 401, 404-05 (2003) (finding that, while the agreement prohibited punitive damages, it was premature to conclude that meaningful relief was therefore unavailable in arbitration because the arbitrator may have concluded that the restriction did not preclude the authorization of "treble damages" under RICO).

Faber argues that the attorneys' fees provision unconscionably deprives him of his statutory right to receive attorneys' fees and costs if he prevails under the ADEA. We conclude that this provision, by merely requiring the parties to pay their own attorneys' fees, is not so substantively unfair and "inimical to the public good"

that it is unconscionable under Iowa law. See Home Federal, 357 N.W.2d at 618. We therefore follow the federal presumption in favor of arbitration and conclude that the arbitrator should determine this remedial issue and decide whether Faber has in fact waived his statutory right to recover attorneys' fees or whether an appropriate remedy may still include them.

The district court concluded that any recovery for Faber in arbitration would necessarily constitute a "Pyrrhic victory." Without any specific numerical evidence of likely arbitration costs or Faber's financial situation, the district court assumed that arbitration fees combined with attorneys' fees would equal or exceed recovery and that the agreement language constituted a waiver of any attorneys' fees adjustment under the ADEA. Instead of applying the test of unconscionability as set forth by the courts of Iowa, the district court focused on its conclusion that Faber could not be made whole in arbitration. In doing so, it went beyond the permissible scope of review of arbitration agreements, interpreting the language of the agreement not just to determine its unconscionability, but to invalidate it on public policy grounds. Its conclusion ignores our precedent requiring that procedural, remedial and public policy issues are for the arbitrator to decide in the first instance, subject to being reviewed on appeal. See, e.g., Larry's United Super, 253 F.3d at 1086; Bailey, 346 F.3d at 824.

The order is reversed, and the case is remanded with directions that the district court determine whether the requirement that Faber pay the arbitrators' fees in the circumstances, unconscionably prevents his access to the arbitral forum. If found to be unconscionable, the offending clause should be severed and arbitration compelled.

_____