# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1522

_____

Equal Employment Opportunity     *
Commission; Louella Rollins,     *
    *
       Appellees,     *    Appeal from the United States
    *    District Court for the
    v.     *    District of Nebraska.
    *
Woodmen of the World Life     *    [PUBLISHED]
Insurance Society, and/or Omaha     *
Woodmen Life Insurance Society,     *
    *
       Appellant.     *

_____

Submitted: November 17, 2006
Filed: March 9, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

The Woodmen of the World Life Insurance Society (Woodmen) sought to compel its employee, Louella Rollins, to arbitrate her Title VII claims and to stay the cross-claims she brought as an intervenor in the Equal Employment Opportunity Commission's (EEOC) enforcement action filed against Woodmen. See 42 U.S.C. § 2000e-5(f). The district court ultimately denied Woodmen's motion, and it allowed

Rollins to intervene in the EEOC action despite her agreement to arbitrate. Woodmen appeals, and we reverse.

## I.

Louella Rollins worked for Woodmen from 1989 to 2001 pursuant to a written employment agreement that included an agreement "to resolve any and all claims, demands, causes of action, charges and disputes of any nature whatsoever, . . . in any way related to the relationship established by this contract, based on any theory . . . including . . . any claims of or for . . . discrimination based on . . . sex . . . under any state or federal law . . ." through alternative dispute resolution, including binding arbitration. (Add. at 5.) Rollins filed a charge of sex discrimination with the EEOC on September 20, 1999, alleging that Woodmen had failed to remedy a hostile work environment created by her male subordinates and ultimately demoted Rollins after she complained to Woodmen's Equal Employment Opportunity office about the hostile environment.

The EEOC commenced a Title VII enforcement action against Woodmen in April 2003, and the district court granted Rollins' motion to intervene in that action in October 2003. Concurrent with the motion to intervene, Rollins filed a cross-claim against Woodmen that was nearly identical to the EEOC's enforcement action. In August 2004, the district court granted Woodmen's motion to compel Rollins to arbitrate the individual claims that she raised as an intervenor against Woodmen in the Title VII action. The district court also stayed Rollins' participation in the EEOC's enforcement action. Thereafter, Woodmen and Rollins entered into an agreement in November 2004 entitled "Agreement to Binding Arbitration," which set out the procedural details of the arbitration. Discovery proceeded concurrently in the EEOC enforcement action and in the arbitration proceeding, and an arbitration hearing was set to begin on May 24, 2005. Prior to the hearing, Rollins filed a motion seeking relief from the district court's order compelling arbitration on the basis that the cost

of the arbitration made it inequitable to force her to arbitrate. Woodmen filed a renewed motion to compel arbitration. The district court granted Rollins' motion and denied Woodmen's renewed motion in an August 25, 2005, order, allowing Rollins to avoid arbitration and to proceed in the EEOC suit.

Meanwhile, Rollins filed a Chapter 7 bankruptcy petition in July 2005 in the Middle District of Pennsylvania. In October 2005 the district court stayed the EEOC's current suit pending action by the Bankruptcy Court, which lifted the automatic stay as it applied to this litigation in December 2005. On February 3, 2006, the district court denied Woodmen's motion to amend the court's August 25, 2005, order denying the motion to compel arbitration, and the district court reissued the August 2005 order. Woodmen appeals. We have jurisdiction over the appeal of the denial of a motion to compel arbitration pursuant to 9 U.S.C. § 16(a)(1)(C).

II.

The issue before this court is whether the district court properly excused Rollins from arbitrating her individual discrimination claims and allowed her to proceed in the EEOC's enforcement action as an intervenor. The district court granted Rollins' requested relief on three bases: (1) because Rollins could not afford arbitration, (2) because forcing Rollins to arbitrate would interfere with the EEOC's ability to pursue its interests on behalf of the public, and (3) because Rollins had filed for bankruptcy protection, listing the lawsuit in her bankruptcy schedules.[1] On appeal, Rollins asserts

_____

[1]The district court's reasoning based on Rollins' bankruptcy filing was part of its August 25, 2005, order. As noted, the Bankruptcy Court for the Middle District of Pennsylvania subsequently determined that, to the extent it applied, the automatic stay would be modified with respect to the Title VII action to the extent necessary to litigate the case. In reinstating its August 25, 2005, order, the district court noted that the bankruptcy stay would not prevent litigation of the case. (Add. at 26, Dist. Ct. Order Feb. 3, 2006, at 3.) Thus, Rollins' bankruptcy proceeding could no longer form part of the district court's reasoning for granting relief to Rollins in its February 3,

that once the EEOC filed its enforcement action, she lost any right to litigate her individual claims other than as an intervenor in the EEOC action, leaving nothing for her to arbitrate. Rollins further asserts that the "external circumstances" of her inability to pay for the arbitration proceeding foreclose enforcement of the arbitration agreement. Woodmen contends that Rollins should be bound by her agreements to arbitrate.

We review *de novo* the district court's denial of Woodmen's motion to compel arbitration. Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc., 468 F.3d 523, 525 (8th Cir. 2006). Under the Federal Arbitration Act (FAA), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA's purpose [was] 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991) (ellipses in original)). The federal policy manifested by the FAA "is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 625 (1985) (internal marks omitted). Arbitration agreements encompassing federal statutory claims are enforceable as long as the potential litigant can effectively vindicate her statutory rights through arbitration. Green Tree, 531 U.S. at 90; see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001) ("Title VII claims are subject to individual consensual agreements to arbitrate."). In the Civil Rights Act of 1991, Congress encouraged the use of alternative dispute resolution, including arbitration, "to resolve disputes arising under the Acts or provisions of

---

2006, order, despite reinstatement of the August 25, 2005, order, and we do not further address the impact of Rollins' bankruptcy proceedings.

-4-

Federal law amended by this title," including Title VII. See Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (Congressional Note on the interpretation of Title VII contained within the 1991 amendments to 42 U.S.C. § 2000e). In addressing a motion to compel arbitration then, courts generally "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004).

The validity of the arbitration agreement is determined by state contract law. Id. We construe the district court's reliance on Faber as raising a concern about the conscionability of the arbitration agreement based on the fee structure. Id. at 1051 (noting that the arbitration agreement at issue required the parties to each pay one half of the arbitrator's fees and their own attorney's fees). The Faber court looked to Iowa contract law to determine whether the fee-splitting provision in the arbitration agreement there at issue was unconscionable, thus invalidating the agreement under state contract law. Id. at 1053. Both the original arbitration agreement contained in Rollins' employment contract and the subsequent "Agreement to Binding Arbitration" provide that the parties will share the costs of arbitration. Rollins introduced evidence in the district court about the costs associated with the private arbitrator chosen to conduct the arbitration proceeding and about her impending bankruptcy. The district court determined that the spiraling costs, coupled with Rollins' financial situation, relieved her of her obligation to continue the arbitration, particularly where she could piggyback on the EEOC's discovery and litigation and avoid incurring those expenses personally.

Under Nebraska law, "the term 'unconscionable' means manifestly unfair or inequitable." Myers v. Neb. Inv. Council, 724 N.W.2d 776, 799 (Neb. 2006). Further, "[a] contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract." Id. Nebraska courts also consider whether a contract is "procedurally

unconscionable," an essential element of which includes "the disparity in respective bargaining positions of parties to a contract." Id. Although Rollins signed a standard Woodmen employment agreement, "adhesion contracts are not automatically unconscionable or void" under Nebraska law. Kosmicki v. Nebraska, 652 N.W.2d 883, 893 (Neb. 2002); see also Faber, 367 F.3d at 1053 (holding that "inequality in bargaining power . . . is not enough by itself to overcome the federal policy favoring arbitration," citing Gilmer, 500 U.S. at 33). Rollins does not argue that splitting the costs of the arbitration is fundamentally unfair, an issue to be determined based on the circumstances that existed at the time the original employment contract was entered, and the district court did not rely on such a conclusion. Indeed, the district court did not analyze the contract under Nebraska contract law at all. Rollins argues only that her current inability to afford the arbitration costs, including both the arbitration fees and her own litigation costs, should relieve her of her agreement to arbitrate. Considering the circumstances that existed at the time the two arbitration agreements were entered, we conclude that neither arbitration agreement is unconscionable under Nebraska law.

To the extent that Green Tree provides a basis for avoiding an arbitration agreement beyond that allowed by general state contract law, Rollins has failed to meet that standard as well. Cf. Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 873 (8th Cir. 2004) (noting that Green Tree addressed the arbitration of federal statutory claims rather than the unconscionability of an arbitration agreement under state law). In Green Tree, the plaintiff claimed that the potential for excessive fees she could incur if she was required to go to arbitration prevented her from vindicating her statutory rights. The Supreme Court recognized that "claims arising under a statute designed to further important social policies may be arbitrated so long as the prospective litigant effectively may vindicate [her] statutory cause of action in the arbitral forum." Green Tree, 531 U.S. at 90 (internal marks omitted). Nonetheless, the Court refused to invalidate an arbitration agreement based on the risk of excessively prohibitive fees where the arbitration agreement was silent on the

allocation of the fees and the record was devoid of any evidence of the costs that would be imposed on the plaintiff. Id. at 90-91. To invalidate an arbitration agreement based on speculation "would undermine the 'liberal federal policy favoring arbitration agreements.'" Id. at 91 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The party seeking to invalidate an arbitration agreement based on prohibitively expensive costs that would preclude the vindication of statutory rights "bears the burden of showing the likelihood of incurring such costs." Id. at 92.

The arbitration agreements here at issue allocate the costs of arbitration equally between the parties, and Rollins has introduced evidence of what those costs will be relative to her financial position. However, Woodmen has agreed to waive the fee-splitting provision and pay the arbitrator's fees in full. Further, the arbitration agreement contained in Rollins' employment agreement includes a severability clause, such that the fee-splitting provision can be severed and the remainder of the arbitration agreement enforced, even absent Woodmen's offer. See Faber, 367 F.3d at 1054 (ordering district court to sever fee-splitting provision on remand if court determines that the provision would preclude Faber from vindicating his statutory rights); Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir. 1999) (ordering the district court to determine whether a reduced arbitration fee is unreasonable, and if it is, to accept the appellant's offer to pay the fee in full). Thus, Rollins has failed to establish that the costs of arbitration will preclude her from vindicating her statutory rights.

We also reject Rollins' claim that the attorney's fees and litigation costs associated with the arbitration proceeding make the agreement unconscionable. We note first the obvious–that "attorney's fees are not unique to arbitration." Faber, 367 F.3d at 1054. Excessive arbitration costs can make an arbitration agreement unconscionable because a litigant does not face fees for the decision-maker similar to arbitration costs when she proceeds in federal court. She does, however, face attorney's fees and litigation costs in court. Thus, the fact that a party will incur

litigation costs and attorney's fees in an arbitral forum does not make that forum unconscionable; she would generally face those fees regardless of the forum. See Faber, 367 F.3d at 1054 (analyzing attorney's fee agreement separately from fee-splitting arrangement).

Rollins asserts that unique circumstances–the arbitrator's requirement that each party's attorney personally guarantee payment of the arbitrator's fees–make it nearly impossible for her to obtain the services of a contingency fee-based attorney, thus greatly increasing her out-of-pocket costs. However, Woodmen's offer to pay the arbitrator's fees in full negates the underlying premise of Rollins' argument. Paying one's own attorney's fees and related litigation costs, particularly where there is no impediment to a contingency fee arrangement, cannot be said to be unconscionable.

The district court relied on the fact that Rollins could piggyback on the EEOC's discovery and litigation to avoid duplicative costs in relieving Rollins of her agreement to arbitrate. While it may be more convenient and efficient to allow Rollins to proceed in the EEOC's case as an intervenor rather than requiring her to arbitrate, that does not make the arbitration agreement unconscionable, and thus invalid, which is the proper standard for allowing a party to avoid her contractual obligation. See Faber, 367 F.3d at 1054-55 (rejecting district court's reliance on policy grounds for invalidating an arbitration agreement). We therefore hold that the arbitration agreements are valid, and we "follow the federal presumption in favor of arbitration." Id. at 1055.

Rollins next argues that the dispute at issue, which she characterizes as her rights as an intervenor in the EEOC's enforcement action, does not fall within the terms of the arbitration agreement. She claims that she has no individual claims to pursue in arbitration because the EEOC preempted her individual cause of action by bringing its enforcement action. See EEOC v. Waffle House, 534 U.S. 279, 291 (2002) ("If, however, the EEOC files suit on its own, the employee has no

independent cause of action . . . ."). The district court determined that requiring Rollins to arbitrate her claims would interfere with the EEOC's ability to pursue its enforcement action.

First, we reject the district court's conclusion that requiring Rollins to arbitrate her claims would interfere with the EEOC's ability to pursue its enforcement action. The Supreme Court specifically held in Waffle House that an arbitration agreement between an employer and an employee did not prevent the EEOC from seeking all remedies available to it in its enforcement action, including victim-specific relief. See id. at 295-96. In this appeal, the EEOC seeks only to ensure that its enforcement action will not be stayed in the event we reverse the district court's judgment relieving Rollins of her obligation to arbitrate her claims. Under Waffle House, we agree that the arbitration agreement and any related proceedings have no bearing on the EEOC's ability to pursue its enforcement action, and we place no limitations on the EEOC's continuation of its enforcement action.

We also reject Rollins' assertion that once the EEOC filed its enforcement action she lost any claim to pursue in arbitration. Rollins places more weight on a single statement in Waffle House–that "an employee has no independent cause of action"–than that statement can bear.[2] Cf. Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.10 (9th Cir. 2006) ("We note in passing that Waffle House made a number of

_____

[2]Rollins is not alone in her thinking. See EEOC v. Physician Servs., P.S.C., 425 F. Supp. 2d 859, 861-62 (E.D. Ky. 2006) (relying on the same statement in Waffle House to relieve an employee of her agreement to arbitrate Title VII disputes). For the reasons stated herein, we respectfully disagree, and we are not alone in doing so. See EEOC v. Hooters of Am., Inc., No. 06-CV-6138CJS, 2007 WL 64163, at *5 (W.D.N.Y. Jan. 9, 2007) (disagreeing with Physician Services, finding that the intervening Title VII plaintiff's independent claims were subject to arbitration, and staying the intervening action while allowing the EEOC's case to proceed); EEOC v. Rappaport, Hertz, Cherson & Rosenthal, 273 F. Supp. 2d 260, 264-65 (E.D.N.Y. 2003) (same).

categorical statements that cannot be taken at face value."). In Waffle House, the Supreme Court stated, in explaining the federal enforcement mechanism under Title VII, that once the EEOC files an enforcement action, "the employee has no independent cause of action, although the employee may intervene in the EEOC's suit," citing § 2000e-5(f)(1). Waffle House, 534 U.S. at 291. The Supreme Court was explaining the EEOC's importance in enforcing Title VII rights and its independent duty to vindicate the public's interest in preventing discrimination in the workplace. Thus, during the pendency of the EEOC's enforcement action, the statutory scheme prevents the employee from bringing a separate federal cause of action for a violation of Title VII. However, it is clear that the employee does not lose her substantive statutory rights under Title VII when the EEOC files an enforcement action. Indeed, as noted by the Supreme Court, the employee is entitled to intervene in the EEOC's suit for the very purpose of preserving her substantive rights. Those rights, which may be protected by intervening in the EEOC's suit, continue to exist after the EEOC has filed its suit. Indeed, those rights formed the basis for Rollins' cross-claims against Woodmen.

That an employee does not lose her substantive Title VII rights is made clear by comparing the Title VII enforcement scheme to the scheme applicable to claims under the Age Discrimination in Employment Act (ADEA). Under the ADEA, once the EEOC files an enforcement action, "the right of any person to bring such an action shall terminate upon the commencement of an action by the [EEOC]." 29 U.S.C. § 626(c)(1) (emphasis added); see also EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1507 (9th Cir.) (noting that once the EEOC files suit, the employee no longer has any ADEA rights to pursue), cert. denied, 498 U.S. 815 (1990). The same is not true under Title VII, which does not terminate an employee's rights. See Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 326 (1980) ("The EEOC's [Title VII] civil suit was intended to supplement, not replace, the private action."); see also Vines v. Univ. of La. at Monroe, 398 F.3d 700, 707 (5th Cir. 2005) ("[T]he enforcement scheme of Title VII does not terminate the rights of the employee once the EEOC

brings a suit."), cert. denied, 126 S. Ct. 1019 (2006); E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 494 n.4 (3d Cir. 1990) (noting that in terminating the employee's private cause of action in an ADEA claim once the EEOC filed suit, the framers of the ADEA consciously departed from Title VII, which had no similar feature). Further, the ADEA does not provide a statutory right to intervene in the EEOC enforcement action, leaving employees to establish that their interest in the EEOC's enforcement action meets the requirements of Federal Rule of Civil Procedure 24(a)(2). By contrast, Title VII explicitly preserves the employee's unconditional right to vindicate her own interests by intervening in the EEOC's enforcement action. See § 2000e-5(f); Fed. R. Civ. P. 24(a)(1) (allowing intervention as a matter of right where a federal statute confers an unconditional right to intervene).

A complete reading of the Supreme Court's analysis in Waffle House convinces us that the Supreme Court did not place the same significance on the statement upon which Rollins relies as does Rollins. The Supreme Court recognized that an employee's conduct, such as the failure to mitigate damages or the acceptance of a settlement, may limit the relief that the EEOC ultimately may obtain in its enforcement action. Waffle House, 534 U.S. at 296. The Supreme Court contemplated that the employee retained some type of claim, or there would be nothing for the employee to settle with the employer. Thus, even though Title VII makes the EEOC the master of the federal cause of action, nothing in Title VII purports to preclude an employee from entering into settlement negotiations.

The Court also noted that "[i]t is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." Id. at 297. In explaining why the arbitration agreement at issue in Waffle House did not apply to the EEOC, which was not a party to the arbitration agreement, the Supreme Court noted that "the FAA enables [the employer] to compel [the employee] to arbitrate his claim, but it does not expand the range of claims subject to arbitration beyond what is provided in the agreement." Id. at 293

n.9. The Supreme Court also found "the statutory language [to be] clear; the EEOC has the authority to pursue victim-specific relief regardless of the forum that the employer and employee have chosen to resolve their disputes." Id. at 295. Had the Supreme Court intended to preclude an employee from asserting claims in arbitration against the employer concurrently with the EEOC enforcement action by its statement that the employee has no independent cause of action once the EEOC filed its enforcement action, it would not have had occasion or need to discuss the possible ramifications of an arbitration award.

An employee indisputably has a right to intervene in an EEOC enforcement action, see 42 U.S.C. § 2000e-5(f)(1), but she also has a right to contract for an arbitral forum within which to litigate her claims. While employers cannot require their employees to prospectively give up their substantive statutory rights, see Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458, 460 (E.D.N.Y. 2006) ("It is well settled that although parties may agree to arbitrate federal statutory claims, 'a party does not forgo the substantive rights afforded by the statute. . . .'" (quoting Gilmer, 500 U.S. at 26)), the key distinction is that intervening in the EEOC's enforcement action is a procedural, not a substantive, right, see Canatella v. California, 404 F.3d 1106, 1113 (9th Cir. 2005) ("Intervention as of right is merely a procedural means for entering an existing federal action."). As noted by the Supreme Court, arbitration agreements are merely forum selection clauses. Waffle House, 534 U.S. at 295.

Considering the Title VII enforcement regime as a whole, as well as the complete analysis in the Waffle House opinion, we conclude that neither Title VII nor Waffle House precludes Rollins from arbitrating her dispute with Woodmen, and that the FAA compels her to arbitrate the dispute. The FAA provides that suits pending in federal court based on issues referable to arbitration "shall [be] . . . stay[ed] . . . until such arbitration has been had." 9 U.S.C. § 3. Rollins can bring all of the cross-claims she asserted as an intervenor in the arbitration proceedings. In fact, by entering into

the arbitration agreements, she has bound herself to do so. Just as an employee's agreement to arbitrate her claims mandates that claims that could be brought in an original Title VII federal action be decided in an arbitral rather than a judicial forum, so too does that agreement mandate that the cross-claims that Rollins attempts to bring as an intervenor in the EEOC's enforcement action be decided in the arbitral forum.

## III.

The district court's judgment denying Woodmen's motion to compel arbitration is reversed, and the case is remanded to the district court for entry of an order compelling arbitration of the cross-claims and such further proceedings as are necessary. Pursuant to § 3 of the FAA, the district court shall stay Rollins' cross-claims filed in the EEOC's action, but there is no basis for staying the EEOC's enforcement action itself.

_____