# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1567

_____

Jose Torres; Guadalupe Clemente; Luz Walker; Christina Beiter; Antonio
Carmona, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

Simpatico, Inc.; Stratus Franchising, LLC; Peter Frese, Jr., individually; Dennis
Jarrett, individually; Carmen Garcia, individually; David Farrell, individually;
Marisa Lather, individually; Alen Suljanovic, individually; Bob Stapleton,
individually; PHSSCH SBS, LLC; Channen Smith, individually; Stratus Building
Solutions of Arizona, Inc.; Lupita Gallego, individually; Ed Nunez, individually;
Jason Dowling, individually; Gonzalo Moreno, individually; Mark Bashforth,
doing business as Stratus Building Solutions of San Diego; Mark Bashforth,
individually; Jayson Bashforth, doing business as Stratus Building Solutions of
San Diego; Jayson Bashforth, individually; Marvin Ashton, individually; Colorado
Cleaning Partners, Inc., doing business as Stratus Building Solutions of Southern
Colorado; James Van Dyke, individually; Channen Smith, doing business as
Stratus of Denver; Joshua Fletcher, individually; Mert Smith, individually;
Kukamachu, Inc., doing business as Stratus of Honolulu; Aaron Kahaloa,
individually; Iowa Building Solutions, LLC, doing business as Stratus of Iowa;
Leonard Fazio, individually; Michael Fazio, individually; Amy Lundstrum,
individually; Stratus Building Solutions of Kansas, LLC; Gator Greenwill,
individually; Luis Morales; Napco Group, Inc., doing business as Stratus Building
Solutions of Maryland; Mike Napolitano, individually; Anthony Napolitano,
individually; Stratus Building Solutions of Nebraska; Chelley Baack, individually;
Jim Morrison, individually; Shawn Vick, individually; Ariss Rogel, individually;
Sunshine Investment Group, Inc., doing business as Stratus of Northern New
Jersey; Don Gartner, individually; Stratus Building Solutions of Long Island, Inc.;
Richard Baran, individually; MARRS, LLC, doing business as Stratus Building
Solutions of Cincinnati; Mark Stocker, individually; Terry Behrle, individually;
Tom Grassi, doing business as Stratus Building Solutions of Cleveland; Tom

Grassi, individually; Tim Tilton, doing business as Stratus Building Solutions of Cleveland; Tim Tilton, individually; HolBon Holdings, LLC, doing business as Stratus Building Solutions of Philadelphia; Tom Weiss, individually; John Coleman, individually; Bonnie Coleman, individually; Ralph Sizemore, doing business as Stratus of Upstate Carolina; Ralph Sizemore, individually; DE Holdings, LLC, doing business as Stratus Building Solutions of Nashville; David Smith, individually; Ed Lease, individually; Mark Bashforth, doing business as Stratus Building Solutions of Houston; Jayson Bashforth, doing business as Stratus Building Solutions of Houston; Greg Fishman, doing business as Stratus of Austin; Greg Fishman, individually; Tom Baker, doing business as Stratus of Dallas; Dawn Caudill, doing business as Stratus of Dallas; Tom Baker, individually; Dawn Caudill, -individually; Stephen Sheriff, individually; TJM Associates, Inc., doing business as Stratus of Northern Texas; Jacquelyn Mosley, individually; Thomas Mosley, individually; Eleazar Quintana, individually; William Ragsdale, individually; Stratus Building Solutions of Northern Utah; Lori Sealy, individually; SYDDAR, inc., doing business as Stratus Building Solutions of Salt Lake; Shauna Sharpsteen, individually; Lucero Flores, individually; Emily Thomas, individually; Shea Sealy, individually

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2015
Filed: March 25, 2015

_____

Before WOLLMAN, SMITH, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jose Torres, Guadalupe Clemente, Luz Walker, Christina Beiter, and Antonio Carmona (the Appellants) appeal from the district court's[1] order granting appellees' motion to compel individual arbitration. We affirm.

The Appellants are current or former unit franchisees of Stratus Franchising, LLC, a commercial cleaning business. Stratus Franchising sells master franchises, which grant a master franchiser the exclusive right to sell Stratus unit franchises in a particular regional market. Each Appellant entered into a standard unit-franchise agreement (Agreement) that included a broad, standard-form arbitration provision. The Appellants filed this putative class-action suit against their respective master franchisers and other individuals and entities associated with the Stratus franchise system (Stratus Group), alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Applying Missouri contract law, the district court granted the Stratus Group's motion to compel individual arbitration under the terms of the Agreement. In reaching that conclusion, the court rejected the Appellants' argument that the arbitration provision was unenforceable as unconscionable and that members of the Stratus Group who were not signatories to their respective Agreements could not invoke or enforce the arbitration provision.[2]

We review *de novo* the district court's decision regarding the validity and scope of the arbitration clause, and we review for clear error any factual findings made in support of that decision. See Faber v. Menard, Inc., 367 F.3d 1048, 1051 (8th Cir. 2004).

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]The individuals and entities who were not signatories to the Appellants' respective Agreements include Simpatico, Inc.; Stratus Franchising, LLC, which, as of April 2008, owns the assets of Stratus Building Solutions; Stratus Franchising CEO, Dennis Jarrett, and COO, Pete Frese; and other current and former master franchisers. We refer to these parties collectively as the Non-Signatory Parties.

The "principal purpose" of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 9-14, is to "ensur[e] that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (quoting Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)) (holding that FAA preempted California judicial rule that deemed unconscionable all class-arbitration waivers in consumer contracts because the rule was an obstacle to FAA's purposes). The FAA thus reflects "a liberal federal policy favoring arbitration," id. at 1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), and such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2.

Because "arbitration is a matter of contract," whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1745-46 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration. See Faber, 367 F.3d at 1052. We ask only whether the arbitration agreement is valid and whether the dispute falls within the terms of that agreement.[3] Id.

Under Missouri law (which the parties do not dispute applies in this case), "arbitration agreements are tested through a lens of ordinary state-law principles that

---

[3]The district court concluded that "[b]ecause plaintiffs' RICO claims allege that they were defrauded, in part, by operation of the [Agreement], the arbitration agreement encompasses those claims." D. Ct. Order of Feb. 3, 2014, at 10. The Appellants do not challenge this determination on appeal.

govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses . . . . such as fraud, duress, or unconscionability." Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. 2012). But "no state-law rule that is 'an obstacle to the accomplishment of the FAA's objectives' should be applied to invalidate an arbitration agreement." Id. (quoting Concepcion, 131 S. Ct. at 1748). In Brewer v. Missouri Title Loans, 364 S.W.3d 486, 492 n.3 (Mo. 2012), the Missouri Supreme Court noted that Missouri courts have traditionally viewed unconscionability in the context of procedural unconscionability, *i.e.*, the formalities of making the contract, and substantive unconscionability, *i.e.*, the terms set forth in the contract. But because Concepcion "dictate[d] a review" limited to "whether state law defenses such as unconscionability impact the *formation* of a contract," the court's analysis would no longer focus on the traditional distinction between procedural and substantive unconscionability and would instead be "limited to a discussion of facts relating to unconscionability impacting the formation of the contract."[4] Id. The court went on to instruct that in future cases, Missouri courts "shall limit review of the defense of unconscionability to the context of its relevance to contract formation." Id.

Nevertheless, the Brewer court also noted that "the purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression[,] and unfair surprise," which may "occur during the bargaining process" or when a later dispute reveals "the objectively unreasonable terms." Id. at 492-93. Thus, courts may be called upon to "consider whether the terms of an arbitration agreement are unduly harsh," that is, "whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or . . . reflect an overall imbalance in the rights and obligations imposed by the contract at issue." Id. at 489 n.1. In either event, the court reasoned, "it is at formation that a party is required to agree to the objectively

_____

[4]The Missouri Supreme Court observed that this analysis was also applied in its ruling in Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. 2012), a decision issued on the same day as the decision in Brewer.

unreasonable terms." Id. at 493. Keeping these principles in mind, we now turn to the facts presented in this appeal.

The Appellants contend that the arbitration provision is unconscionable and should not be enforced because the prohibitively high costs associated with an individual arbitration proceeding prevent them from pursuing their claims. In support of this argument, they point to terms in the arbitration provision requiring them to prepay filing and other fees and to reimburse Stratus Group's costs and expenses if Stratus Group prevails in an individual arbitration proceeding. The Appellants bear the burden of showing that individual arbitration would be prohibitively expensive, and that it is likely, as opposed to merely speculative, that the prohibitive costs will actually be incurred. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000). In addition, to "overcome the federal policy favoring arbitration," the Appellants must establish more than a "hypothetical inability to pay" the costs of arbitration. Faber, 367 F.3d at 1053. Rather, they must present "specific evidence of likely arbitrators' fees" and evidence of their own financial inability to pay those fees so that the court can determine whether the arbitral forum is accessible. See id. at 1054. If this burden is not met, "the district court must honor the arbitration agreement and compel arbitration." Id.

The Appellants' evidence included (1) an American Arbitration Association (AAA) general schedule of filing fees for claims under $10,000 ($775) and for claims between $10,000 and $75,000 ($975); (2) a AAA study of average daily rates charged by commercial arbitrators in Chicago, Illinois ($1800); Colorado ($1442); Hamilton County, Ohio ($1442); and Indiana ($1308); and (3) the Appellants' counsel's affidavit estimating that an individual hearing would take three days to complete, that the average loss among all putative class members was approximately $6100, that the cost of arbitration would exceed the amount of any class member's claim, and that none of the Appellants nor any member of the putative class could afford the costs to individually arbitrate a claim. App'x of Appellants at 60-62.

This evidence does not constitute the "specific evidence" necessary to establish that individual arbitration is cost prohibitive and thus that the arbitration provision is unconscionable. As the district court found, the average daily arbitrator fee quoted by the Appellants does not necessarily reflect the likely cost to arbitrate because, by definition, some arbitrator fees are below that average. Moreover, none of the Appellants reside in the four geographic areas for which average daily arbitrator rates were provided, so it is difficult to discern how these rates are relevant. The Appellants do not provide fee data for Missouri, New York, Texas, or Arizona—the states in which they reside. See Green Tree, 531 U.S. at 90 n.6 (concluding that list of fees incurred in other arbitrations did not establish that plaintiff would, in fact, incur substantial costs in arbitration and that "unsupported statements provide no basis on which to ascertain the actual costs and fees" of arbitration). And, the district court noted, the arbitration provision specifically grants the arbitrator "the right to award . . . any relief which he or she deems proper," including discretion to allocate costs and expenses between the parties. App'x of Appellants at 132; see also Cicle v. Chase Bank USA, 583 F.3d 549, 556 (8th Cir. 2009) (noting that cost-sharing and cost-shifting provisions in the arbitration agreement saved it from being unconscionable on its face).

Likewise, the estimates set forth in counsel's affidavit regarding the theoretical cost and length of an individual arbitration proceeding do not suffice to establish the likely cost of arbitration for the Appellants. Counsel's affidavit declares that neither Appellants nor any member of the putative class can afford the costs of individual arbitration, but that declaration is mere conjecture. None of the Appellants provided declarations or affidavits attesting to his or her particular inability to pay the costs of arbitration. The Appellants failed to carry their burden to show that the costs of individual arbitration "are so high as to make access to the forum impracticable" or to prevent them from effectively vindicating their rights in the arbitral forum. Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310-11 (2013); see also Green Tree, 531 U.S. at 90 ("The 'risk' that [Respondent] will be saddled with prohibitive

-7-

costs is too speculative to justify the invalidation of the arbitration agreement."). Given the Appellants' failure to carry their evidentiary burden, we need not opine on whether in a particular case the expenses involved in an individual arbitration might be so high as to render access to an arbitral forum impractical. See Green Tree, 531 U.S. at 910.

The Appellants also argue that the arbitration agreement is unconscionable because it includes a waiver of the punitive or exemplary damages and attorney's fees that might otherwise be available in a successful RICO action. This argument is unavailing. "Questions about remedy are . . . outside our scope of review because they do not affect the validity of the agreement to arbitrate." Faber, 367 F.3d at 1052. More specifically, "[w]hether a prospective waiver of punitive damages violates the public policy underlying RICO's treble damages provision is a matter for the arbitrators in the first instance when fashioning an appropriate remedy if a RICO claim is proven to the arbitrator's satisfaction . . . ." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001); see also Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536, 539 (8th Cir. 2002) ("[I]ssues of remedy go to the merits of the dispute and are for the arbitrator to resolve in the first instance.").

The Appellants next argue that even if the arbitration provision is enforceable, it can be invoked and enforced only by the master franchisers who actually signed the respective Agreements and not by the Non-Signatory Parties. "[S]tate contract law governs the ability of nonsignatories to enforce arbitration provisions." Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 732 (8th Cir. 2009) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009)). Under Missouri law:

> Only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member. In cases where the contract lacks an express declaration of that intent,

there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. Furthermore, a mere incidental benefit to the third party is insufficient to bind that party.

Verni v. Cleveland Chiropractic Coll., 212 S.W.3d 150, 153 (Mo. 2007) (quotations and citations omitted). The Appellants argue that the language in the Agreement did not "clearly express intent to benefit" the Non-Signatory Parties. We disagree.

The arbitration provision set forth in the Agreement states that "all controversies, disputes, or claims between us and our affiliates, and our and their respective members, officers, managers, agents, and/or employees, and you . . . must be submitted for binding arbitration." App'x of Appellants at 131-32. The Agreement further provides that the arbitration provision is "intended to benefit and bind certain third party non-signatories." Id. at 132. The Agreement requires that the Appellants purchase insurance policies naming Stratus Franchising, LLC (a Non-Signatory Party) as an additional insured, and it provides for the indemnity of the master franchiser and "its shareholders, directors, officers, employees, affiliates, agents and assignees, Stratus [Franchising, LLC,] and other Stratus franchisees." Id. at 123-24. It also includes a termination provision, which states that Stratus Franchising, LLC "has the right, but not the obligation, to assume the rights and obligations" covered in an Agreement after that Agreement expires or is terminated. Id. 125-26. In sum, Stratus Franchising, LLC and the master franchisers, none of which were signatories to the Appellants' respective Agreements, are nevertheless named beneficiaries of those Agreements. Moreover, the language of the Agreement is sufficiently broad and inclusive to express an intent to benefit not only the actual signatories and named beneficiaries, but also the other Non-Signatory Parties, all of whom are owners, operators, agents, officers, or employees of the master franchisers or of Stratus Franchising, LLC. The district court did not err in concluding that the Non-Signatory Parties, as third-party beneficiaries of the Agreement, could invoke and enforce the

arbitration provision.  In light of this holding, we need not address Stratus Group's alternative arguments on this issue.

The judgment is affirmed.

_____