# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 09-3173/3393/3449/10-1041

———————

Bank of America, N.A.,        *
       *
       Plaintiff – Appellee,       *
       *    Appeals from the United States
       v.        *    District Court for the Western
       *    District of Missouri.
UMB Financial Services, Inc.; Sheryl,    *
Bosilevac; Elizabeth C. Brown; Aaron   *
Israelite; Amy Pieper; Molly Kerr,      *
       *
       *
       Defendants – Appellants.    *

———————

Submitted: May 11, 2010
Filed: August 26, 2010

———————

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

———————

BYE, Circuit Judge.

UMB Financial Services and individual defendants appeal a series of orders in which the district court[1] declined to compel Bank of America (BOA) to submit to arbitration and declined to stay litigation pending the outcome of such arbitration. We affirm.

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

# I

Sheryl Bolsilevac, Elizabeth Brown, Aaron Israelite, Amy Pieper, and Molly Kerr all worked for BOA as financial advisors for high-net-worth clients of the bank. Bosilevac, Brown, Pieper, and Israelite, were licensed to broker securities; Kerr was not. All five were paid salary by BOA. They also periodically received commissions from Banc of America Investment Services (BOAIS), a subsidiary of BOA which dealt with investments in securities, when such commissions came from a securities-related sale.

All five employees worked under employment agreements that included non-solicitation clauses which prohibited them from soliciting BOA customers for a period of time if they left BOA's employment. The non-solicitation clauses for three of the employees – Bosilevac, Brown, and Pieper – referred to both BOA and BOAIS[2] and provided as follows:

> Registered Representative agrees to solicit the sale of, market, and/or sell securities only for Firm pursuant to this Agreement, except as otherwise approved in writing by Firm. Should the Registered Representative separate from the Firm, Bank or the Affiliate, whether voluntarily or involuntarily, the former Registered Representative agrees that, for a period of one year, the Registered Representative may not and will not solicit or attempt to solicit any securities related business, directly or indirectly, any Firm, Bank or Affiliate customers who were served by or whose names became known to the Registered Representative while in the employ of the Firm, Bank, Affiliate, or any of their predecessors.

The non-solicitation agreements for the other two employees – Israelite and Kerr – referred only to BOA and contained the statement:

---

[2]These three non-solicitation agreements were entitled "Dual Employment and Non-Solicitation Agreement by a Registered Representative of Banc of America Investment Services, Inc. and as an Employee of Bank of America, N.A."

If I am hired as an employee of the Bank, I agree that for the period of my employment by the Bank and for six months after the date of the termination of my employment with the Bank, I will not (i) solicit or induce any associates of the Bank to leave the employ of the Bank or (ii) solicit the business of any customer of the Bank (other than on behalf of the Bank) of whom I became aware or was introduced in the course of my duties for the Bank.

Thus, the non-solicitation period was one year for Bosilevac, Brown, and Pieper, and six months for Israelite and Kerr.

All five employees left BOA in the spring of 2009 and started work for UMB, where their duties did not include the sale of securities. BOA believed the five employees began courting their previous customers from BOA in violation of the non-solicitation agreements. On May 15, 2009, counsel for BOA and BOAIS sent a letter to UMB demanding that UMB cease "any efforts to contribute or cause current or former Bank of America employees to violate their obligations regarding nonsolicitation[.]"

BOA filed this suit on July 27, 2009, to enforce all five agreements and sought damages. BOAIS never brought claims against the employees. BOA requested a temporary restraining order to prevent irreparable loss of its client base during the litigation. Three days later, UMB responded by moving to dismiss the complaint for failure to join BOAIS as a necessary party and for lack of subject matter jurisdiction. The district court immediately granted BOA's request for a temporary restraining order (TRO) pending a hearing on BOA's request for a preliminary injunction set for August 19. On August 3, UMB moved again to dismiss the case, this time for failure to state a claim upon which relief could be granted, and moved in the alternative for judgment on the pleadings.

On August 6, UMB also filed a statement of claim with the Financial Services Regulatory Authority (FINRA) to commence arbitration proceedings against BOA and

BOAIS. FINRA is the organization that issued licenses to Bosilevac, Brown, Pieper, and Israelite to broker securities. FINRA was formed by consolidation of NYSE Regulation, Inc. (the enforcement arm of the New York Stock Exchange) and the National Association of Securities Dealers, Inc. (the regulating organization for securities brokers). Organized under 15 U.S.C. § 78s, part of the Securities and Exchange Act (SEA), FINRA regulates the securities industry pursuant to an agreement between its member entities and approval by the Securities and Exchange Commission. FINRA is a private entity, part of the system of self-regulation set up under SEA.

FINRA has its own Code of Arbitration for disputes between members and between members and their employees. Each member of FINRA agrees, by membership, to submit to arbitration if a "dispute arises out of the business activities of a member or an associated person and is between or among: Members: Members and Associated Persons; or Associated Persons." "Associated persons" are defined under the FINRA code as individuals who are registered with FINRA, whereas "members" refers to the organizations regulated by FINRA. UMB Financial Services is a member of FINRA. BOA is not a member of FINRA. BOA claims none of the individual defendants, except for Pieper, work for UMB Financial and requested leave of the district court to substitute UMB Bank (a non-FINRA entity) as defendant. That motion is stayed along with the rest of the district court proceedings pending the outcome of these appeals.

On August 7, UMB moved to stay proceedings in district court pending outcome of the arbitration and asked the district court to compel BOA to participate in the FINRA proceedings. On August 28, the district court denied the motion to compel arbitration "without prejudice" and expressed its intent to preserve the status quo until it could hear argument and adequately consider the issues before it. FINRA sent the district court a letter stating that it intended to conduct the arbitration because the district court had not specifically enjoined UMB and the five former BOA

employees from arbitration with BOAIS, but indicating FINRA would comply with any subsequent order directly enjoining such arbitration. The district court entered an order *sua sponte* on September 10 enjoining the parties from arbitrating their dispute until the court ruled otherwise, and reiterating its intent to preserve the status quo while it considered the issues.

On September 11, 2009, UMB appealed both the district court's August 28 order denying the motion to compel arbitration without prejudice, and the district court's September 10 order enjoining the arbitration. UMB also filed a request to stay the district court proceedings pending resolution of the appeal. The same day, the district court heard argument on the motion to stay proceedings, granted the stay, and extended the TRO to October 14, finding UMB did not oppose such extension in light of the stay. UMB subsequently appealed that order. On October 9, BOA moved to extend the TRO or, in the alternative, for a hearing on the preliminary injunction. The court granted the extension of the TRO and UMB subsequently appealed that order.

On October 15, BOA moved this court to dismiss the appeals or stay them pending the district court's decision on the preliminary injunction. We denied the motion to dismiss but stayed the appeals so the district court could rule on the preliminary injunction.

The district court lifted its earlier stay and denied both of UMB's pending dispositive motions but joined BOAIS as a necessary party on December 14, 2009. UMB moved the next day to compel arbitration with BOAIS, renewed its motion to compel arbitration with BOA, and requested another stay of the district court proceedings. BOAIS had joined BOA's resistance to its inclusion as a necessary party, stating that it had no claims in the litigation and waiving any claims that could arise out of the subject matter of the litigation. BOAIS has never filed a claim in this litigation and has not filed anything since it was joined as an involuntary plaintiff. On December 23, the district court denied UMB's new motions to compel and requests

for a stay of proceedings. The district court also denied BOA's request to equitably extend the term of Israelite's and Kerr's non-solicitation agreements, which had expired during the litigation.

On December 24, the district court granted BOA's request for a preliminary injunction, restraining the three individuals with active non-solicitation agreements from violating them further and restraining UMB from doing business with customers acquired in violation of any of the agreements. UMB appealed.

The four appeals were consolidated and expedited and the district court stayed the litigation pending resolution in this court. Although the orders appealed from address a number of issues, UMB only addresses on appeal the question of whether the district court should have compelled BOA and BOAIS to arbitrate in the FINRA proceedings, and whether the district court consequently erred when it enjoined the parties from proceeding with the FINRA arbitration.

II

> Section 2 - the FAA's substantive mandate - makes written arbitration agreements valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract. That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts. Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, on application of one of the parties, to stay the action if it involves an issue referable to arbitration under an agreement in writing.

Arthur Andersen LLP v. Carlisle, 129 S.Ct. 1896, 1901-02 (2009) (citations and internal quotation marks omitted).

Ordinarily, courts of appeals have jurisdiction only over "final decisions" of district courts. 28 U.S.C. § 1291. The FAA [Federal Arbitration Act], however, makes an exception to that finality requirement, providing that "an appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A).

Id. at 1900.

The question of whether a dispute should be arbitrated[3] under a contract is one of contract interpretation, which we review de novo. Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 998 (8th Cir. 2006). We review the district court's underlying factual findings for clear error. Id. Because this is a diversity action, we apply the substantive law of the forum state.[4] Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009).

III

"A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." Berkley v. Dillard's

---

[3]Appellants argued for the first time in their reply brief that the question of whether a particular dispute should be arbitrated in a FINRA proceeding is one for the arbitrator. See FSC Sec. Corp. v. Freel, 14 F.3d 1310, 1312-13 (8th Cir. 1994). Since we find the parties did not agree to be bound by the FINRA arbitration code, we do not reach the issue of whether any particular dispute is appropriate for arbitration under FINRA rules. We would not consider the question in any case, as it was argued for the first time in a reply brief. Turnage v. Fabian, 606 F.3d 933, 942 n.9 (8th Cir. 2010).

[4]Appellants also argued for the first time on reply that the laws of various states other than Missouri apply to govern the non-solicitation agreements. Although we do not believe our result would be different under any of the state laws cited by appellants, we decline to consider this argument because it was also raised for the first time in a reply brief. See Turnage, 606 F.3d at 942 n.9.

Inc., 450 F.3d 775, 777 (8th Cir. 2006). A party who has not agreed to arbitrate a dispute cannot be forced to do so. PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 977 (8th Cir. 2000). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability" Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

The non-solicitation agreements at issue in this case do not contain arbitration clauses. The only possible arbitration agreement at issue here is FINRA form U-4, which is executed by all members and contains an agreement to arbitrate if a "dispute arises out of the business activities of a member or an associated person and is between or among: Members: Members and Associated Persons; or Associated Persons." UMB Financial Services is a FINRA member and subject to the provisions of that document. All the individual appellants except for Kerr are FINRA associated persons who are also subject to the requirements of form U-4. BOA is not a FINRA member.

**BANK OF AMERICA**

BOA is not a FINRA member and did not directly agree to subject itself to arbitration under FINRA's terms. Appellants must provide an alternate reason for finding the arbitration agreements are enforceable against BOA. "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants. . . . The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731-32 (8th Cir. 2009) (internal quotes omitted). "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter

ego, incorporation by reference, thirty-party beneficiary theories, waiver and estoppel[.]" Arthur Anderson, 129 S.Ct. at 1902.

The Supreme Court of Missouri in Dunn Industrial Group, Inc. v. Lafarge Corp., 112 S.W.3d 421 (Mo. 2003), found a third party guarantor could not be bound by an agreement to arbitrate in a construction contract to which it was not a signatory, where the contract to which it was a signatory did not incorporate the arbitration provision of the construction contract. Id. at 435. The court noted,

> [a]rbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. As such, a guarantor who is not a signatory to a contract containing an arbitration clause is generally not bound by the arbitration clause. However, in a majority of state courts, including Missouri, due to the strong federal policy in favor of arbitration, arbitration agreements are enforced against guarantors or sureties where the arbitration agreement is incorporated by reference into the guaranty or performance bond.

Id. The parties do not argue the employment contracts signed by BOA in any way incorporated the FINRA membership contract arbitration clauses.

*Estoppel*

UMB argues BOA should be estopped from disclaiming the obligation to arbitrate because its claims are inextricably intertwined with any claims BOAIS might bring against the appellants and because BOA seeks to benefit from its association with BOAIS. The Dunn court considered a similar argument and rejected outright the idea that a nonsignatory could be bound to an arbitration agreement under an estoppel theory. In distinguishing cases in which arbitration agreements were enforced on a theory of estoppel, the court stated,

-9-

[t]hese cases, which held that arbitration between a signatory and nonsignatory was required based on an estoppel theory, are, however, distinguishable from the instant case. In those cases, signatories to contracts containing an arbitration agreement were estopped from avoiding arbitration with nonsignatories when the issues the nonsignatories were seeking to resolve in arbitration were intertwined with the agreement signed by the signatory. Conversely, in this case, LaFarge, a signatory to the construction contract seeks to compel Dunn, a nonsignatory, to arbitrate its claims . . . under the guaranty. A party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. Dunn is not a signatory to a contract containing an arbitration clause. At no point did Dunn indicate a willingness to arbitrate any disputes with Lafarge.

Id. at 436. The court also found the estoppel cases were based on actions inextricably intertwined with the contract containing the arbitration agreement, not the collateral contract sought to be enforced. Id. at 436-37. Finally, the court found the nonsignatory, while it had benefitted from the contract it sought to enforce, it had not accepted a benefit from the contract which contained the arbitration agreement, or committed any action which would have been inconsistent with the nonsignatory's position that the arbitration clause did not apply to it. Id. at 437.

This case is similar in most relevant respects to Dunn. BOA never signed an agreement containing an arbitration clause. The document BOA did sign, the employment agreement, did not incorporate the arbitration clause of the FINRA contracts by reference or otherwise. The Missouri court rejected the idea that inextricability of facts permitted the court to compel arbitration where the nonsigning party had not agreed to arbitration in some way in its own right. Even were that theory permissible under Missouri law, here, as in Dunn, BOA's claims are inextricably entwined with BOAIS's under the employment contract, not inextricably intertwined with the FINRA arbitration agreements. UMB has not shown that BOA sought the benefit of the FINRA membership agreements in any way related to this dispute.

-10-

*Third Party Beneficiary*

The Supreme Court of Missouri visited the issue of third party nonsignatories and arbitration again in <u>Nitro Distributing, Inc. v. Dunn</u>, 194 S.W.3d 339 (Mo. 2006). The case involved claims against the Amway family of companies and related individuals. The Amway entities attempted to compel arbitration with Nitro and West Palm, companies owned by an Amway distributor which were not party to any of the Amway agreements signed by the distributor. The court set forth the law with regard to third party beneficiaries as follows:

> To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member. In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. Furthermore, a mere incidental benefit to the third party is insufficient to bind that party. Here, the Amway distributorship agreement expresses no intent whatsoever to benefit Nitro and West Palm, and any benefit obtained from the agreement, if at all, was incidental. Accordingly, Nitro and West Palm are not third-party beneficiaries.

<u>Id.</u> at 345.

There is no evidence that form U-4, the FINRA membership agreement, in any way referenced BOA as a third party beneficiary or that it contained any language benefitting a third party in BOA's position. BOA did not derive any benefit from the FINRA memberships at issue here. It could not even hire FINRA members in their FINRA capacities, because it was not a member of FINRA. BOAIS derived that benefit from the contract, not BOA. In <u>Nitro</u>, the nonsignatory's entire purpose for existing was to provide support for an Amway distributorship (the distributor owned all three companies) and the Missouri Supreme Court found the benefit those companies derived from the Amway operating agreements was incidental if it existed

at all. BOA is not a third party beneficiary to any of the FINRA membership contracts such that it could be compelled to arbitrate based on the arbitration provisions contained therein.

The district court did not err when it denied the motion to compel BOA to arbitrate its claims against UMB and the individual appellants. BOA did not agree in writing or otherwise to arbitrate claims with any of them and cannot be compelled to do so.

*Waiver*

"We review de novo the legal determination of waiver but examine the factual findings underlying that ruling for clear error." Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 920 (8th Cir. 2009).

> In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration. Nevertheless, we will find waiver where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.

Ritzel Commc'ns., Inc. v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 968-69 (8th Cir. 1993). We need not reach the question of waiver since the district court properly determined there was no existing right to arbitration in this case. It would also be inappropriate for us to examine the issue of waiver, which requires factual findings, when the district court did not make such findings because it did not reach the question, having disposed of the case on other grounds.

**BANC OF AMERICA INVESTMENT SERVICES, INC.**

BOAIS was joined as an involuntary plaintiff and has waived all claims related to the litigation or arising out of the employment agreements and non-solicitation clauses. UMB and the individual appellants have not asserted any claims against BOAIS. The district court did not err in denying the request to compel arbitration with respect to BOAIS because there are no claims pending in this suit between BOAIS and UMB or the individual defendants which the district court could have compelled the parties to arbitrate.

IV

**Motion for a stay pending arbitration**

The district court did not err in denying the motion to stay its proceedings pending arbitration because, for the reasons set forth above, there was no "issue referable to arbitration under an agreement in writing" that would have triggered the court's obligation to stay proceedings.

V

**Order enjoining arbitration**

UMB asserts the district court's order enjoining arbitration was a violation of the due process clause because it was issued without notice and because UMB did not have the opportunity to be heard on the matter. However, the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it. In re Y&A Group Sec. Litig., 38 F.3d 380, 382-83 (8th Cir. 1884) ("The All Writs Act makes plain that each federal court is the sole arbiter of how to protect its own judgments: federal courts "may issue all writs necessary ... in aid of their respective

-13-

jurisdictions...." 28 U.S.C. § 1651(a)."). UMB sought to join BOAIS as a necessary party in the lawsuit, and eventually succeeded in doing so. UMB was aware of the pending district court litigation when it filed the FINRA arbitration without waiting for the district court's decision on the motion to compel arbitration. The district court issued the order enjoining arbitration *sua sponte* to clarify its intention that the parties not arbitrate while the court considered the issue, after FINRA informed the court that it would allow the arbitration to proceed unless specifically enjoined from doing so. The district court did not err in temporarily enjoining the parties from participating in binding arbitration on a matter which UMB was attempting simultaneously to litigate in district court.

VI

For the above-stated reasons, we affirm.

_____