NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1174                                      Appeals Court


SILVERWOOD PARTNERS, LLC  vs.  WELLNESS PARTNERS, LLC.[1]


No. 16-P-1174.

Middlesex.     May 9, 2017. - July 25, 2017.

Present:  Agnes, Massing, & Lemire, JJ.



Financial Institution.  Arbitration, Stay of judicial
    proceedings.  Contract, Arbitration.  Practice, Civil,
    Motion to dismiss.  Estoppel.  Securities, Registration of
    broker-dealer.



Civil action commenced in the Superior Court Department on
November 4, 2015.

A motion to dismiss was heard by Elizabeth M. Fahey, J.


Michael Paris for the plaintiff.
Christopher Robertson for the defendant.


MASSING, J.  In this appeal we consider whether the

doctrine of equitable estoppel bars the plaintiff corporation,

which agreed to arbitrate its claims against the two principals

of the defendant corporation, from litigating nearly identical

_____

[1] Doing business as Whipstitch Capital.

claims against the defendant corporation itself.  In the circumstances of this case, we hold that it does.

Background.  The plaintiff, Silverwood Partners, LLC (Silverwood), initiated this lawsuit alleging that its former employees, Nicolas McCoy and Michael Burgmaier, breached their contractual and fiduciary duties by secretly creating a competing firm -- the defendant Wellness Partners, LLC, doing business as Whipstitch Capital (Whipstitch) -- stealing Silverwood's clients, converting Silverwood's property, and diverting Silverwood's business opportunities to Whipstitch.

Silverwood, a broker-dealer registered with the Securities and Exchange Commission (SEC), is a member of the Financial Industry Regulatory Authority, Inc. (FINRA).  McCoy and Burgmaier are registered with FINRA and, as senior executives with Silverwood, had the status of FINRA "associated persons." Whipstitch is not a member of FINRA.  Silverwood's original complaint named McCoy, Burgmaier, and Whipstitch as defendants.[2] The three codefendants filed a motion to dismiss, or in the alternative to stay the proceedings, on the ground that

---

[2] Silverwood's original complaint included eight counts, seven asserted against McCoy, Burgmaier, or both, and four including Whipstitch as well:  (1) breach of contract and (2) of the implied covenant of good faith and fair dealing by McCoy and Burgmaier; (3) breach of fiduciary duty by McCoy and (4) aiding and abetting breach of fiduciary duty by Burgmaier; and (5) conversion, (6) interference with advantageous business relations, (7) tortious interference with contractual relations, and (8) violation of G. L. c. 93A by all defendants.

Silverwood's claims fell within the scope of FINRA's mandatory arbitration provision, which governed McCoy's and Burgmaier's relationship with Silverwood.  In response, Silverwood filed a first amended complaint in which it dropped McCoy and Burgmaier as parties, leaving Whipstitch as the sole defendant.[3] Whipstitch filed a renewed motion to dismiss or stay, maintaining that Silverwood was equitably estopped from proceeding against Whipstitch outside of arbitration.  A Superior Court judge allowed Whipstitch's motion to dismiss on the ground that "the entire matter is required to be arbitrated."[4]

---

[3] The first amended complaint asserted five counts against Whipstitch alone:  (1) aiding and abetting McCoy in the breach of his fiduciary duty, (2) conversion, (3) tortious interference with advantageous business relations, (4) tortious interference with contractual relations, and (5) violation of G. L. c. 93A.

References to the "complaint" herein refer to the first amended complaint.  We refer to the "original complaint" or the "amended complaint" when differentiation between the two is essential to the discussion.

[4] Whipstitch has attached to its brief a copy of a FINRA arbitrators' award, which reflects that Silverwood filed a claim for arbitration against McCoy and Burgmaier with the FINRA Office of Dispute Resolution, and that the arbitrators entered an award favorable to McCoy and Burgmaier while this appeal was pending.  Whipstitch asks us to take judicial notice of the arbitration decision, which is not part of the record; Silverwood has not raised any objection to the inclusion of the decision.  Ultimately, we need not decide whether to take judicial notice of the arbitration decision, as it does not factor into our decision.

According to the allegations in Silverwood's amended complaint, McCoy's and Burgmaier's employment relationship with Silverwood was governed by Silverwood's "Supervisory Procedures and Compliance Manual," attached as an exhibit to the complaint and referred to as the "[a]greement."  The agreement makes it clear that McCoy's and Burgmaier's duties to Silverwood and its clients were substantially governed by SEC and FINRA rules and regulations.  For example, the complaint alleges that McCoy and Burgmaier agreed to comply with the agreement's outside business activity restriction, a provision required by FINRA rule 3270 and its supplemental requirements.  Silverwood also alleged that McCoy and Burgmaier made false and misleading public statements in violation of FINRA rules.  Indeed, references to FINRA rules, restrictions, and mandates appear on nearly every page of the agreement.

Under the agreement, Silverwood's employees are required to be "appropriately registered with and licensed by FINRA."  McCoy and Burgmaier were required to file an initial "Form U4" (U4 registration form) -- FINRA's "Uniform Application for Securities Industry Registration or Transfer" -- and to amend the U4 registration form "upon the occurrence of an event that requires an update," including any changes in outside business activities.

FINRA, pursuant to its rule 13200,[5] requires arbitration of claims between or among its members and associated person, and the agreement incorporates mandatory FINRA arbitration.  A section of the agreement entitled "U4 Disclosure to Associated Persons" explains that FINRA rules require Silverwood to provide each associated person with a written statement "indicating that the [U4 registration form] contains a predispute arbitration clause."  Silverwood's chief compliance officer is responsible "for verifying that each associated person has signed a predispute arbitration clause certification."  McCoy's and Burgmaier's U4 registration forms included the certification, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the [FINRA] rules."

Discussion.  The parties do not dispute that the FINRA rules, as incorporated in Silverwood's agreement with McCoy and

---

[5] In pertinent part, FINRA rule 13200 provides as follows:

"13200.  Required Arbitration

"(a) Generally

"Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is in between or among:

- Members;
- Members and Associated Persons; or
- Associated Persons."

Burgmaier and in their U4 registration forms, require Silverwood's dispute with McCoy and Burgmaier to be submitted to FINRA arbitration. See generally Bank of Am., N.A. v. UMB Financial Servs., 618 F.3d 906, 909, 912 (8th Cir. 2010) (discussing FINRA arbitration). However, Whipstitch is not a member or associated person within the meaning of the FINRA rules. See Ladd v. Scudder Kemper Invs., Inc., 433 Mass. 240, 243-245 (2001) ("person associated with a member" under rules of National Association of Securities Dealers limited to natural persons; therefore, nonmember corporation could not compel arbitration); United States Trust Co., N.A. v. Rich, 211 N.C. App. 168, 173-174 (2011) ("associated person" within meaning of FINRA rules limited to natural persons; therefore, nonmember corporation could not compel arbitration). Accordingly, Whipstitch cannot demand arbitration under FINRA rule 13200. See Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 796 (2014) (Neither Federal nor Massachusetts arbitration act "compels arbitration of claims brought by one who is not covered by an arbitration agreement"); Unisys Fin. Corp. v. Allan R. Hackel Org., 42 Mass. App. Ct. 275, 280 (1997) ("[I]t is fundamental that a party has no right or obligation to demand arbitration if there is no contract provision providing for it").

Thus, the only issue in this appeal is whether Whipstitch may extend the reach of the provision in the agreement that

requires Silverwood to arbitrate its claims against McCoy and Burgmaier to compel Silverwood to arbitrate with it. Whipstitch contends that Silverwood is equitably estopped from avoiding arbitration because the allegations in its lawsuit are intimately intertwined with its claims against McCoy and Burgmaier. We agree.

Federal courts generally "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Thomson-CSF, S.A. v. American Arbitration Assn., 64 F.3d 773, 779 (2d Cir. 1995). See, e.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir.), cert. denied, 531 U.S. 1013 (2000); InterGen N.V. v. Grina, 344 F.3d 134, 145-146 (1st Cir. 2003). The Supreme Judicial Court recently adopted the doctrine of equitable estoppel in Machado v. System4 LLC, 471 Mass. 204 (2015). The court explained,

> "Equitable estoppel typically allows a nonsignatory to compel arbitration in either of two circumstances: (1) when a signatory 'must rely on the terms of the written agreement in asserting its claims against the nonsignatory' or (2) when a signatory 'raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'"

Id. at 211, quoting from Grigson, supra.  The second circumstance emphatically applies in this case.

Silverwood has "consistently alleged concerted misconduct" by Whipstitch, McCoy, and Burgmaier.  Machado, supra at 215. The complaint begins by asserting that "Whipstitch is a company created by two highly paid former senior executives of Silverwood," and that while McCoy and Burgmaier worked at Silverwood, "their efforts were focused on secretly building Whipstitch."  Every alleged injurious action taken by Whipstitch is based on McCoy's and Burgmaier's conduct while they were employed by Silverwood.  For example, in a section entitled, "Whipstitch Secretly Starts Poaching Silverwood's Clients," the complaint describes how McCoy and Burgmaier, "[a]cting on behalf of Whipstitch," engaged a new client for Silverwood but fashioned the terms of the agreement to facilitate their ability to transfer the engagement to Whipstitch.  The complaint further alleges that "McCoy and Burgmaier acted improperly on behalf of Whipstitch to drive other Silverwood clients towards Whipstitch as well."  The complaint continues, "Since their departure, McCoy and Burgmaier, acting on behalf of Whipstitch, have convinced a number of Silverwood's clients and Industry Advisors to terminate their relationship with Silverwood."

That Silverwood's claims against Whipstitch are intertwined with its claims against McCoy and Burgmaier becomes even more

apparent by comparing the original complaint, which named McCoy, Burgmaier, and Whipstitch as defendants, with the amended complaint, which named only Whipstitch.  The amended complaint incorporates perhaps ninety percent of the original complaint verbatim.  Even more telling are the alterations Silverwood made to the original complaint.  Where the original complaint referred to McCoy and Burgmaier or to the defendants collectively, the amended complaint simply substituted the word "Whipstitch."  For example, the section of the amended complaint referred to above -- "Whipstitch Secretly Starts Poaching Silverwood's Clients" -- was entitled "McCoy and Burgmaier Secretly  Start Poaching Silverwood's Clients" in the original complaint (emphasis supplied).  Where another section of the original complaint described the "Defendants' Tortious Interference with Silverwood's Advantageous Business Relations," the amended complaint referred to "Whipstitch's Tortious Interference," based on the exact same allegations (emphasis supplied).  Furthermore, in several instances where the original complaint alleged conduct by McCoy and Burgmaier, the amended complaint simply inserted the phrase "acting on behalf of Whipstitch."

Despite the fact its claims against Whipstitch in the complaint are just a slightly repackaged version of its claims against McCoy and Burgmaier that are required to be arbitrated,

Silverwood suggests two related reasons why the doctrine of equitable estoppel should not be applied in this case. Neither is persuasive.

First, Silverwood asserts that doctrine of equitable estoppel applies only when a signatory to a contract containing an arbitration clause is asserting contract-based claims against a nonsignatory. See Machado, 471 Mass. at 211-212, quoting from Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 449 Fed. Appx. 704, 710 (10th Cir. 2011) ("The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel"). While the assertion of contract claims is an essential element of the first of the two bases for equitable estoppel -- "when a signatory 'must rely on the terms of the written agreement in asserting its claims against the nonsignatory'" -- it is not essential for the second basis -- when a party to an arbitration agreement raises allegations by both a party and a nonparty of "substantially interdependent and concerted misconduct." Machado, 471 Mass. at 211 (quotation omitted). See Grigson, 210 F.3d at 527-528 (discussing the two "independent bases advanced by the Eleventh Circuit [in MS Dealer Serv. Corp., 177 F.3d at 947] for applying the intertwined-claims doctrine").

In any event, Silverwood does in fact substantially rely on its contracts with McCoy and Burgmaier in its allegations of misconduct by Whipstitch. The complaint refers repeatedly to Silverwood's "[a]greement" with McCoy and Burgmaier, and Silverwood repeatedly invokes the FINRA rules and requirements encompassed in the agreement in describing McCoy's and Burgmaier's misconduct. Silverwood's assertion that its claims "are solely based on Whipstitch's tortious conduct" does not survive scrutiny. Although Silverwood has attempted to characterize its claims against Whipstitch as sounding in tort, for example, interference with advantageous business and contractual relations, its complaint is "fundamentally grounded in [McCoy's and Burgmaier's] alleged breach of the obligations assigned to [them] in the [Silverwood] agreement." Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 838 (7th Cir. 1981). See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 758 (11th Cir. 1993), quoting from McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984) (party may not avoid arbitration "by attempting to cast its complaint in tort rather than contract").

Second, Silverwood correctly notes that the doctrine of equitable estoppel has never been applied to compel FINRA arbitration as opposed to contractual arbitration. To our

knowledge, the only appellate decision in which the doctrine of equitable estoppel is discussed in the context of FINRA arbitration is Bank of Am., N.A., 618 F.3d at 912-914.  In that case, a FINRA member attempted to assert the doctrine of equitable estoppel against a party that was not a member.  Id. at 912 (noting that plaintiff "is not a FINRA member and did not directly agree to subject itself to arbitration under FINRA's terms").  The court rejected this attempt, noting that the "inextricably intertwined" claims theory of equitable estoppel might appropriately be asserted by a nonsignatory to compel a party that has agreed to an arbitration provision, but cannot be applied inversely to compel a nonsignatory to comply with an arbitration agreement that it never agreed to.  Id. at 912-913.  Thus, a FINRA member such as Silverwood could not compel a nonmember such as Whipstitch to submit to FINRA arbitration.

These considerations do not apply here, where it is a nonmember, Whipstitch, that seeks to compel a FINRA member to submit to FINRA arbitration.  Silverwood did agree to subject itself to arbitration of its claims against McCoy and Burgmaier. "The context of the case is significant.  The party who is a signatory to the written agreement requiring arbitration is the party seeking to avoid arbitration."  Sourcing Unlimited, Inc. v. Asimco Intl., Inc., 526 F.3d 38, 46 (1st Cir. 2008). Silverwood's dispute with Whipstitch is "sufficiently

intertwined with [Silverwood's agreement with McCoy and Burgmaier] for application of estoppel to be appropriate." Id. at 47.

Allowing Silverwood to maintain a lawsuit against Whipstitch based on the conduct of McCoy and Burgmaier would substantially undermine the FINRA arbitration proceedings. See MS Dealer Serv. Corp., 177 F.3d at 947 (quotation omitted) (application of equitable estoppel necessary to prevent arbitration proceedings between signatories from being "rendered meaningless"). "The linchpin for equitable estoppel is equity -- fairness. For the case at hand, to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness." Grigson, 210 F.3d at 528.

Judgment affirmed.