ORTRIE D. SMITH, SENIOR JUDGE
*596 Pending is Defendant's motion to compel arbitration. Doc. # 7. For the following reasons, the Court grants the motion, compels arbitration, and stays the matter pending completion of arbitration.
I. BACKGROUND[1]
Defendant employed Plaintiff as a server at its Independence, Missouri location from March 31, 2014, to July 17, 2017. Plaintiff's petition alleges Defendant violated the Fair Labor Standards Act ("FLSA") and Missouri's Minimum Wage Law ("MMWL") by failing to pay employees minimum wage. Plaintiff seeks certification of an FLSA collective action, and two class actions pursuant to Missouri Rule of Civil Procedure 52.08. Plaintiff also brings a claim for unjust enrichment/quantum meruit. After removing the matter from the Circuit Court of Jackson County, Missouri (Doc. # 1), Defendant filed its motion to compel arbitration.[2]
Defendant moves to compel arbitration based on an Alternative Dispute Resolution Agreement ("arbitration agreement") allegedly agreed to by Plaintiff on July 9, 2015. Defendant maintains an online training system, Cracker Barrel University, in which one module entitled "ADR Sign-off" prompts employees to review and accept an arbitration agreement. After accessing the ADR module with a unique identification number and password, the employee *597 is presented with Defendant's arbitration agreement. After an opportunity to read and review the arbitration agreement, the employee is presented with a prompt stating: "[p]lease close this document and mark 'complete' to signify you have read, understood and will comply with the agreement." Upon closing the document, the employee is presented with a screen prompting the employee to click "Mark Complete." After an employee does so, Defendant's system records the date and time the employee completed the module.
The arbitration agreement is typical of those between an employee and employer. Doc. # 8-2. The opening preamble states the parties exchange mutual promises as contained in the agreement, identifies an agreement to use informal conciliation and confidential binding arbitration, and provides the agreement is governed by the Federal Arbitration Act. The agreement lists the types of disputes covered, and identifies disputes not covered, such as complaints to administrative agencies. Informal conciliation procedures are detailed, and arbitration is identified as the exclusive forum to resolve disputes not settled in conciliation. The agreement identifies rules governing the arbitration proceeding, as well as the timing and location of an arbitration hearing. The parties can elect to have legal representation, and states Defendant will forgo legal counsel if the employee does not seek counsel. The agreement details applicable limits on discovery processes, and the use of witnesses and exhibits at the arbitration hearing. The agreement permits an arbiter to award relief to either party to the extent the party is entitled to such relief by law. As discussed in detail below, the agreement provides fees and costs associated with judicial actions. Finally, the agreement waives the ability to bring class and collective actions in court or arbitration, and waives the right to a jury trial.
Here, Defendant's records indicate Plaintiff completed the ADR Sign-off module at 9:49 p.m. on July 9, 2015. Defendant cites Plaintiff's completion of the module and agreement to arbitrate claims as the basis for its pending motion. Plaintiff states she was directed to complete many different trainings in Defendant's online system, and she understood all materials in the system to be informative and "not anything I had a choice in." Doc. # 25-1, ¶ 4. Additionally, Plaintiff asserts she was not asked to consent or agree to an agreement or contract in Defendant's online system, and did not consent or agree to any agreement or contract in the system. Defendant disagrees, arguing Plaintiff entered a valid contract to arbitrate claims asserted in this matter, and seeks to compel her to arbitrate her claims.
II. DISCUSSION
Under the Federal Arbitration Act ("FAA"), a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus. v. URS Corp. , 377 F.3d 868, 871 (8th Cir. 2004) ; see also Int'l Bhd. of Elec. Workers v. Hope Elec. Corp. , 380 F.3d 1084, 1098-99 (8th Cir. 2004). Absent an enforceable agreement to arbitrate a particular dispute, neither party can compel arbitration of that dispute. See Bank of Am., N.A. v. UMB Fin. Servs., Inc. , 618 F.3d 906, 911 (8th Cir. 2010) (quoting Berkley v. Dillard's Inc. , 450 F.3d 775, 777 (8th Cir. 2006) ); Granite Rock Co. v. Int'l Bhd. of Teamsters , 561 U.S. 287, 299-300, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010). The FAA establishes "a liberal federal policy favoring arbitration agreements." Epic Sys. Corp. v. Lewis , --- U.S. ----, 138 S.Ct. 1612, 1621, 200 L.Ed.2d 889 (2018) (quoting *598 Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ).
State law is applied to determine if a binding agreement exists. Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 629-31, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ; Bank of Am. , 618 F.3d at 911. Under Missouri law, the party seeking to compel arbitration bears the burden to prove a valid and enforceable arbitration agreement exists. LoRoad, LLC v. Glob. Expedition Vehicles, LLC , 787 F.3d 923, 927 (8th Cir. 2015) (citing Baier v. Darden Rests. , 420 S.W.3d 733, 737 (Mo. Ct. App. 2014) ). A valid contract under Missouri law requires offer, acceptance, and bargained for consideration. Baker v. Bristol Care, Inc. , 450 S.W.3d 770, 774 (Mo. banc 2014).
A. Contract Formation
In April 2017, United States Magistrate Judge John Bodenhausen reviewed the exact arbitration agreement at issue, and granted Defendant's motion to compel arbitration. Franklin v. Cracker Barrel Old Country Store , No. 17 CV 00289 JMB, 2017 WL 7691757 (E.D. Mo. Apr. 12, 2017).[3] Plaintiff argues that opinion is not persuasive authority because Franklin did not make the same arguments asserted by Plaintiff. However, Plaintiff's arguments related to offer and acceptance elements were thoroughly discussed and rejected in Franklin . See , id. , at *3-4 (finding the arbitration agreement's terms "make it clear" Defendant was manifesting a willingness to enter into the agreement, and finding it "equally clear" an employee would understand the agreement to be binding upon acceptance).
The Court agrees with the analysis of offer and acceptance in Franklin. The arbitration agreement was presented in Defendant's online training system in a module specifically entitled "ADR Sign-Off." In multiple ways, the terms of the agreement indicate Defendant's desire to enter an agreement. The document is titled "Cracker Barrel Alternative Dispute Resolution Agreement." The term "I agree" appears no fewer than seven times in the document, and a box at the end of the document instructed Plaintiff to "close this document and mark 'complete' to signify you have read, understood and will comply with the agreement." And Defendant's online training system indicates Plaintiff marked "complete" after opening the module, thereby indicating her acceptance. Moreover, the final page of the document is signed by Defendant's representative below the word "AGREED."
Plaintiff maintains the noncontractual and nonbinding manner in which the arbitration agreement was presented should override the Franklin analysis. Plaintiff seems to suggest an employee must proceed through a variety of training modules and policies, including an employee handbook, before finally arriving at the ADR module. On the contrary, Defendant states there are several modules, but links to each module appears on the "Welcome" main menu accessed immediately after an employee logs into the system. The evidence does not show Plaintiff must methodically click through the entirety, or even a portion, of Defendant's handbook and other training materials.[4]
*599 Plaintiff further argues a contract was not formed because there is no way to verify she read the agreement or understood marking complete would signal her agreement to arbitrate, and the arbitration agreement could not be signed electronically or by hand. "Under Missouri law, 'a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud.' " Franklin , 2017 WL 7691757, at *6 (quoting Midwest Printing, Inc. v. AM Int'l, Inc. , 108 F.3d 168, 170 (8th Cir. 1997) ). Here, Plaintiff is held to have knowledge of the arbitration agreement's contents because she was given the opportunity to review the agreement, and there is no suggestion of fraud. That Plaintiff "completed" English and Spanish language versions, or spent zero hours and zero minutes in the module,[5] is not legally significant given that she was afforded the opportunity to review the arbitration agreement before marking it complete. Relatedly, Plaintiff's inability to physically or electronically sign the document does not disclaim contract formation. See Franklin , 2017 WL 7691757, at *4 (reviewing same arbitration agreement and rejecting argument that mode of acceptance, i.e. marking complete, is not adequate in light of "state and federal regulatory schemes" permitting electronic "click-to-accept" method).
Finding offer and acceptance are satisfied, the Court next examines whether the arbitration agreement is supported by consideration such that a valid contract was formed upon Plaintiff's acceptance. Sufficient consideration may be a promise to do (or refrain from doing) something, or may be a transfer or relinquishment of something of value to the other party. Sniezek v. Kan. City Chiefs Football Club , 402 S.W.3d 580, 583 (Mo. Ct. App. 2013) (citation omitted). If a contract contains mutual promises imposing a legal duty or liability on each party as a promise to the other party, the contract is a bilateral contract with sufficient consideration. Id. The Court may look to the contract's language, as well as the practical effects of the contract's provisions to determine whether the parties are mutually obligated such that sufficient consideration exists. Jimenez v. Cintas Corp. , 475 S.W.3d 679, 688 (Mo. Ct. App. 2015) (citations omitted).
Plaintiff argues Defendant has not made, by the express language and by practical effect, sufficient mutual promises such that consideration exists. The "covered disputes" indicates Plaintiff agreed to arbitrate:
*600 disputes concerning wage and hour law, compensation, leave, harassment, discrimination, retaliation, breaks or rest periods, uniform maintenance, expense reimbursement, training, discipline, termination, defamation, transfer, demotion, promotion and termination. It also includes, but is not limited to, any claims that come about through Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act, Equal Pay Act, Americans with Disabilities Act, as amended, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and any federal, state or local laws or regulations covering the same or similar matters or any aspect of the employment relationship, as well as any tort, negligence, or contractual claim.
Doc. # 8-2, at 1. Defendant agreed to arbitrate claims it may have against Plaintiff, "such as for conversion or breach of fiduciary duty and other business torts like intentional interference or inducement to breach a contract." Id. These express terms indicate a mutual obligation and agreement to arbitrate claims, supporting Defendant's argument that sufficient consideration exists. See Franklin , 2017 WL 7691757, at *5 (citing Missouri and federal cases holding mutual agreements between an employer and employee to arbitrate claims are sufficiently supported by consideration to be binding).
Plaintiff cites Defendant's disclosure that it has filed thirty-five police reports against employees suspected of criminal activity as evidence of Defendant's allegedly illusory promise to arbitrate claims.[6] Plaintiff presumes Defendant's conduct as pursuing conversion claims, in contravention of the arbitration agreement. But Defendant's disclosure did not specify the alleged illegal conduct upon which the police reports were based. The record does not indicate Defendant filed a criminal complaint against Plaintiff. Furthermore, Plaintiff cites no precedent establishing the filing of a complaint for criminal misconduct constitutes a waiver of an agreement to arbitrate claims of a civil nature as set forth in the arbitration agreement's "covered disputes" provision. Finally, although Plaintiff characterizes a police report as a "claim" made by Defendant against an employee, any proceeding stemming from a criminal complaint is brought on behalf of the state or other governmental entity, and requires establishing a different set of elements and proof different in nature than a civil proceeding. Accordingly, the Court believes the comparison Plaintiff attempts to establish between civil and criminal matters inapt.[7]
Plaintiff also cites Defendant's disclosure that it has never filed an arbitration case against an employee in support of her argument that mutuality does not exist. The converse is also true here: Defendant has never initiated judicial proceedings against an employee in contravention of an agreement to arbitrate between it and an employee. The record does not demonstrate the practical effect of the arbitration agreement's mutual promises is not sufficient consideration. The Court finds the parties' mutual promise to arbitrate claims *601 per the agreement's terms is sufficient consideration for a valid contract. Accordingly, the Court finds the arbitration agreement is a valid contract supported by offer, acceptance, and bargained for consideration.
B. Other Defenses
In addition to arguing issues with contract formation, Plaintiff may assert traditional state-law defenses, such as fraud, duress, or unconscionability, to invalidate the arbitration agreement. See Pleasants v. Am. Express Co. , 541 F.3d 853, 857 (8th Cir. 2008). An arbitration agreement may also be invalidated if Plaintiff cannot effectively vindicate statutory claims in arbitration. See Whitney v. Alltel Comms. , Inc., 173 S.W.3d 300, 311 (Mo. Ct. App. 2005). Plaintiff argues the arbitration agreement should be invalidated because (1) it permits a prevailing defendant to obtain attorney's fees, contrary to the FLSA; (2) requires informal conciliation that results in the running of the statute of limitations; and (3) is unconscionable as a whole.
Section twelve of the arbitration agreement, entitled "Judicial Action," states: "[e]ither party may bring an action in any court of competent jurisdiction to compel arbitration under this Dispute Resolution Agreement and to enforce an arbitration award. The prevailing party in such an action shall be awarded its attorneys' fees and costs." Doc. # 8-2, at 4. Plaintiff argues a prevailing defendant could recover attorney's fees in contravention of the FLSA, and thus, chill an employee's ability to effectively vindicate her statutory rights.
Plaintiff must show arbitration is prohibitively expensive, and it is likely, as opposed to merely speculative, prohibitive costs will actually be incurred. See Torres v. Simpatico, Inc. , 781 F.3d 963, 969 (8th Cir. 2015) (citing Green Tree Fin. Corp. v. Randolph , 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ). Plaintiff's reliance on section twelve confuses the issue of the her costs to arbitrate. Section five of the arbitration agreement expressly states, upon filing an arbitration claim, Plaintiff will be required to pay no more than $ 200. Doc. # 8-2, at 2. Section twelve, on the other hand, applies only to "judicial actions," and thus, does not negate the commitment that Plaintiff will pay no more than $ 200 in bringing an arbitration claim. Plaintiff's assertion that a "would-be litigant" will pay attorney's fees if she loses in arbitration is unsupported by the arbitration agreement's language.
Plaintiff speculates she may be liable for attorney's fees in moving to enforce an arbitration award. "A suit to enforce an arbitration award is actually a suit seeking specific performance of a contract." Milk Drivers, Dairy & Ice Cream Emps., Laundry & Dry Cleaning Drivers, Clerical & Allied Workers, Local Union No. 387 v. Roberts Dairy , 294 F.Supp.2d 1050, 1059 (S.D. Iowa 2003) (citations omitted). Under the arbitration agreement, Plaintiff may only face an "action" to "enforce an arbitration award" if the arbiter's decision requires performance of a directive, she fails to perform, and Defendant brings an action seeking enforcement. Alternatively, an arbiter's decision may direct Defendant's performance, but Defendant does not perform, leading to Plaintiff's filing of an action. In that scenario, Plaintiff is only liable if she does not prevail in that judicial action.
Plaintiff cites two circuit court cases in support of its argument that an attorney's fee award to Defendant is contrary to the FLSA's statutory scheme, but neither squares with the arbitration agreement at issue here. In Zaborowski v. MHN Government Services, Inc. , a fee-shifting provision stated "[t]he prevailing party, or *602 substantially prevailing party's costs of arbitration, are to be borne by the other party, including reasonable attorney's fees." 936 F.Supp.2d 1145, 1154 (N.D. Cal. 2013). The district court found that clause, pertaining to fees potentially incurred in arbitration , was contrary to California and federal law, and the Ninth Circuit affirmed. See Zaborowski v. MHN Gov't. Servs., Inc. , 601 F. App'x 461, 463 (9th Cir. 2014). Plaintiff also cites Shankle v. B-G Maintenance Management of Colorado, Inc. , in which an arbitration agreement was invalidated because the agreement's requirement that an employee pay one-half of the arbiter's fees could lead to a prohibitively expensive cost to the employee. 163 F.3d 1230, 1234-35 (10th Cir. 1999). Neither of these cases are on point with the arbitration agreement at issue here, which pertains to judicial actions and does not require Plaintiff to pay half of an arbiter's fees or pay attorney's fees if Defendant prevails in arbitration.
Plaintiff fails to show section twelve operates to prohibit her from vindicating her statutory rights in an arbitral forum. The plain language does not support Plaintiff's argument that she will be liable for attorney's fees if she loses in arbitration. The arbitration agreement limits Plaintiff's costs to $ 200 should she file an arbitration action. This is not a prohibitively expensive cost that chills Plaintiff's ability to vindicate her claims in arbitration. Accordingly, the Court rejects Plaintiff's argument related to section twelve of the arbitration agreement.
Plaintiff next argues the arbitration agreement should be invalidated because the agreement's pre-arbitration conciliation procedures created administrative exhaustion requirements forcing employees to "waste months of their [statute of] limitations period." The arbitration agreement's pre-arbitration provisions, contained in section three, require both parties to conciliate claims before filing an arbitration action. The agreement first requires an employee to use Defendant's "Open Door Policy" or contact the Employee Relations Department with a complaint. If a complaint is not resolved within thirty days, or the complaint pertains to anything other than harassment, discrimination, or retaliation and involves a legal claim, the employee agrees to participate in a telephone conciliation process. A telephonic conciliation shall occur within thirty days of the request, but the parties may skip this process by written, mutual consent. If the dispute remains unresolved after conciliation, the parties may proceed to arbitration consistent with the agreement.
Plaintiff stretches the conciliation section's language to argue the process takes several months or "at a very minimum of 60 days" to complete. The FLSA statute of limitations is two years, or three years if the violation is willful. See 29 U.S.C. § 255(a). Even accepting Plaintiff's argument that the conciliation process requires more than sixty days, Plaintiff has ample time to assert a claim prior to the running of the statute of limitations. Moreover, the Court does not read the conciliation procedures to require several months. The agreement permits a reasonable amount of time, thirty days, by which the Employee Relations Department must complete an investigation. If the investigation is not complete, Plaintiff may immediately seek a telephonic conciliation, which must be done within thirty days. The process is simply not as long and arduous as Plaintiff describes.
Defendant agreed to waive conciliation procedures in this matter. Plaintiff's petition indicates she last worked for Defendant on July 17, 2017. Thus, concerns about the statute of limitations are not *603 present here. Additionally, based on Defendant's representation that it will waive conciliation procedures for Plaintiff, the Court expects Defendant to abide by its representation. Finally, the Court notes the arbitration agreement does not prohibit claims before, among others, the Department of Labor. Plaintiff has a number of opportunities to timely make her complaints, and vindicate her statutory rights. Accordingly, the Court rejects Plaintiff's argument that the arbitration agreement impermissibly causes the FLSA statute of limitations to run on an employee's claims.
Finally, Plaintiff argues the arbitration agreement should be invalidated because it is unconscionable. Missouri law defines unconscionable as "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." Franklin , 2017 WL 7691757, at *5. Plaintiff rightly acknowledges the elimination of a right to a jury trial and class action rights does not make an arbitration agreement unconscionable. Nonetheless, Plaintiff's unconscionability argument merely reiterates her arguments related to the formation of the contract, fee-shifting and "exhaustion of administrative remedies," and the inequality of her bargaining power with Defendant.
The Court finds the agreement as a whole, or individual clauses in isolation, are not unconscionable. As set forth supra , the Court considered Plaintiff's arguments regarding contract formation and vindication of her FLSA rights. To the extent Plaintiff argues the agreement is a contract of adhesion, the Court rejects such an argument as contrary to Missouri law. See Robinson v. Title Lenders, Inc. , 364 S.W.3d 505, 515 (Mo. banc 2012) ; see also Baker v. Science Int'l Corp. , 273 F. App'x 577, 579 (8th Cir. 2008) (finding the arbitration agreement was not a contract of adhesion where there was no indication the employee could not seek employment elsewhere.). Accordingly, the Court declines to invalidate the arbitration agreement due to unconscionability.
III. CONCLUSION
For the foregoing reasons, Defendant's motion is granted. The Court compels the parties to arbitrate the claims filed herein in accordance with the terms of the parties' arbitration agreement. The Court stays the matter pending completion of arbitration. The Court orders the parties to file a notice with the Court within ten days of the completion of arbitration. If arbitration is not completed by December 31, 2018, the parties shall jointly file a status report on that date setting forth the status of the arbitration.
IT IS SO ORDERED.

The facts herein are taken from Plaintiff's petition (Doc. # 1-2), and the parties' briefing and exhibits on the pending motion to compel arbitration (Docs. # 8, 25, 26).

The Court granted Plaintiff's request to engage in limited discovery related to Defendant's motion. Doc. # 12. In early June 2018, the Court held a telephone conference related to the limited discovery. Doc. # 18. As a result of the telephone conference, the Court ordered Defendant to produce additional documents and answer certain interrogatories by July 5, 2018, and ordered Plaintiff to respond to Defendant's motion to compel by July 19, 2018. On July 11, 2018, Plaintiff served a Rule 30(b)(6) deposition notice on Defendant for a deposition scheduled for July 18, 2018. Doc. # 22. The notice identified eight topics, which were identical to the topics contained in Plaintiff's interrogatories and/or requests for production of documents. On July 16 and 17, 2018, the parties communicated with the Court via email to request an additional telephone conference because Plaintiff sought additional documents from Defendant, and Defendant sought a protective order regarding Plaintiff's deposition notice. The Court was not available to resolve these last minute requests, and informed the parties no telephone conference would be held. At 4:57 p.m. on July 17, 2018, Defendant filed a motion for protective order (Doc. # 23), which the Court denied at 7:29 a.m. the next morning. Doc. # 24. Thereafter, Defendant offered to make a corporate representative available for a deposition via telephone, consent to an extension of time, and/or file supplemental briefs after the deposition could be held. Docs. # 26-2, 26-3. Plaintiff rejected these offers, has not filed an amended deposition notice, and has not filed supplemental briefing. After nearly three months of discovery related to the motion to compel, a matter on which discovery is disfavored, the Court declines to order additional discovery or a Rule 30(b)(6) deposition for the purpose of the pending motion.

Although the format differs, a similarly worded arbitration agreement between Defendant and its employee was also held valid and enforceable in December 2017. See Rodriguez v. Cracker Barrel Old Country Store, Inc. , 17-cv-20, 2017 WL 6349173, at *10 (E.D. Ky. Dec. 12, 2017).

The timing of Plaintiff's employment also causes the Court to doubt Plaintiff was required to proceed through other documentation before accessing the ADR module. Plaintiff's affidavit states she started working for Defendant on an unspecified date in 2015, and states, "[a]fter I was hired, Cracker Barrel instructed me to complete a computerized training process." Doc. # 25-1, at 1. However, Plaintiff's petition states she started working for Defendant on March 31, 2014. Doc. # 1-2, at 1. The "transcript history" portion of Plaintiff's ADR record indicates the ADR module was assigned to Plaintiff on June 10, 2015, over a year after Plaintiff would have been presented with any initial training materials and/or a handbook. The evidence does not support Plaintiff's argument that she was required to navigate an extensive set of training materials or access the handbook prior to entering the ADR module and viewing the arbitration agreement.

Defendant's record lists "Training Hours" associated with the ADR Module as "0 Hours 0 Min." Doc. # 8-3. Plaintiff suggests this establishes she spent zero hours and zero minutes in the module. Alternatively, the record may simply indicate Defendant did not allocate a total amount of time to the ADR Module, and the employee may complete it in an unspecified time. Even if the Court accepts Plaintiff's version, the Court's conclusion does not change because Plaintiff was given an opportunity to review the arbitration agreement.

In its reply brief, Defendant states a supplemental disclosure reported the number of police reports filed is forty rather than thirty-five.

The Court also notes there is no evidence demonstrating the employees subject to a criminal complaint initiated by Defendant agreed to the same arbitration agreement Plaintiff has.